**J. J. SCHMITT & CO., Inc. v. TURNEY, Director, Division of Liquidation, Department of Commerce.**

**No. 237.**

United States Emergency Court of Appeals.
Submitted June 28, 1948.
Decided Aug. 17, 1948.

Milton H. Friedman, of Buffalo, N. Y., for complainant.

T. Vincent Quinn, Asst. Atty. Gen., for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

MAGRUDER, Judge.

On October 24, 1944, complainant filed with the Office of Price Administration its protest against Revised Maximum Price Regulation No. 169—Beef and Veal Carcasses and Wholesale Cuts, effective December 16, 1942 (7 F.R. 10381), and Revised Maximum Price Regulation No. 239 —Lamb and Mutton Carcasses and Wholesale Cuts, effective December 23, 1942 (7 F.R. 10688). It described itself as engaged, in Buffalo, New York, "in the slaughter of calves and lambs and in the sale of veal and lamb carcasses and wholesale cuts". The administrative relief requested was prospective only—that RMPR 169 and RMPR 239 be set aside and that there be

issued in lieu thereof "a new schedule of prices which will cover the cost of livestock and include a margin for slaughtering which is generally fair and equitable."

The Price Administrator consolidated this protest with a number of other pending protests from the Buffalo area involving the same two regulations. By order issued May 31, 1945, the consolidated protests, including that of the present complainant, were denied, in accordance with the report and recommendation of a Board of Review.

Claiming to be aggrieved by this order of denial, complainant filed its complaint in this court on June 18, 1945. The prayer was for a judgment by this court declaring the two regulations "as they existed at the time of the filing of the protest, unreasonable and invalid."

By order on July 21, 1945, we consolidated the present complaint with similar complaints which had been filed by the other Buffalo protestants. It is unnecessary now to state in detail the protracted proceedings which followed. On May 6, 1946, this court granted an application by complainants in the consolidated cases for leave to introduce additional evidence. Pursuant to that order the Price Administrator, on June 12, 1946, reopened the protest proceedings for the introduction of additional evidence. In the course of the reopened proceedings, it appeared that criminal proceedings had been commenced against the various complainants for alleged violations of the regulations during certain periods of the year 1944. The Price Administrator then recognized that the reopened protest proceedings involved not only the question of prospective relief but also the question of the validity of the regulations at certain past periods during which the criminal violations were alleged to have occurred. Upon reconsideration of the protests, both on the basis of the original record and on the basis of the additional evidence, the Price Administrator entered an order on September 18, 1946, again denying the protests.

■ Oral argument on the consolidated complaints was held by us on December 5, 1946. Meanwhile the commodities covered by RMPR 169 and RMPR 239 had been decontrolled by Amendment 64 to Supplementary Order 132 (11 F.R. 12093). The case had therefore become moot, in so far as prospective relief was concerned. It has also become moot in so far as the various complainants had asked us to declare the regulations invalid "as they existed at the time of the filing of the protest," that is, on October 24, 1944, since that date was subsequent to the period of controversy involved in the then pending criminal enforcement proceedings.

■ At the oral argument, counsel for the Price Administrator conceded that, in view of the criminal proceedings then pending against the several complainants, the cases were not moot in so far as the record presented a question as to the validity of the regulations during the period from April 1, 1944, through August 19, 1944, which was the period covered by the alleged criminal violations. We were willing to treat the complaints as having been informally amended so as to ask for a retroactive declaration by us that the regulations were invalid during that particular period. The period to be covered by such a retrospective declaration must necessarily be clearly defined for the reason stated by us in Ben H. Rosenthal & Co., Inc. v. Porter, Em.App., 1946, 158 F.2d 171, 173:

"It is possible, of course, that the maximum prices in a regulation initially valid may become invalid due to a significant shift of economic factors; and vice versa. In making a retrospective declaration as to the validity of a regulation as of some past date, this court should not view the case from the vantage point of hindsight. If, for example, a seller is charged with a criminal violation by an overceiling sale on December 15, 1943, and the question is whether the regulation was valid on that date, we have to project our thinking back to the economic situation as it existed on December 15, 1943, and to decide whether the Administrator then had, consistently with the statutory standards, a rational basis for maintaining the regulation in force in the light of information then available and of the reasonable forecast, as of

that date, of the probable impact of the regulation in actual operation."

Furthermore, on complaints coming to this court pursuant to § 204(a) of the Emergency Price Control Act, 56 Stat. 23, 50 U.S.C.A.Appendix, § 924(a), we are not empowered to give a declaration as to the validity of a regulation as of some past period, unless the validity of the regulation as of that period was drawn into issue in the protest proceedings; for it was the design of the protest procedure to give the Price Administrator a first opportunity to consider the specific objections raised to the regulation and to embody in the transcript of the protest proceeding such evidence as he might deem relevant and appropriate to meet the particular objections which the protestant might have to the validity of the regulation.

At the time of the argument before us, the pendency of the aforesaid criminal prosecutions was the only ground suggested for our continued jurisdiction in the consolidated cases. Apart from that, the assumption was that the complaints would necessarily be moot.

Some time after the cases were submitted to us, respondent moved that the complaints be dismissed as moot, on the ground that the aforesaid criminal proceedings had been dismissed. Most of the consolidated cases were thereupon dismissed by us on stipulation. But complainant J. J. Schmitt & Co., Inc., procured from us several enlargements of time within which to answer the motion to dismiss. Finally, on June 4, 1948, this complainant filed its objection to the motion to dismiss, on the ground that there was still pending a certain civil proceeding against J. J. Schmitt & Co., Inc., alleged to be based upon violations of the same two regulations.

It appears that on February 28, 1944, the Price Administrator filed a complaint in equity in the District Court of the United States for the Western District of New York against J. J. Schmitt & Co., Inc., charging the company with violations of RMPR 169 and RMPR 239 by overceiling sales of veal and mutton carcasses and wholesale cuts "since the Regulations have been in effect"—the dates of the violations not being more specifically indicated. The prayer was for a permanent injunction, no claim for damages having been included. The next day, February 29, 1944, the court issued a permanent injunction upon the basis of a stipulation which recited that the parties had "agreed upon a basis for the adjustment of the matters alleged in the complaint," and upon the entry of a consent decree granting injunctive relief.

Also, on February 28, 1944, J. J. Schmitt & Co., Inc., executed a document entitled "Confession of Judgment," reciting as follows:

"The above named defendant hereby confesses judgment in this action in favor of Chester Bowles, Administrator, Office of Price Administration, for and on behalf of the United States the above named plaintiff, for the sum of $12,500.00 damages this 28th day of February, 1944, and hereby authorizes the Clerk of the United States District Court to enter judgment against said defendant accordingly * * * without notice to said defendant, to give effect to this confession and to enter and have judgment against said defendant for the amount mentioned in this confession and have execution therefor." Though the "Confession of Judgment" does not say so, we may perhaps presume that the $12,500.00 was the amount of a compromise settlement of a disputed claim by the Price Administrator for treble damages under § 205(e) of the Act, on account of the violations of RMPR 169 and RMPR 239 charged, in general terms, in the aforesaid complaint for an injunction. Since the "Confession of Judgment" was executed February 28, 1944, such alleged violations must have occurred some time prior to that date, and may have occurred at any time within a year prior thereto,* but the actual dates involved are nowhere indicated.

On June 6, 1945, the District Enforcement Attorney for the O.P.A. executed and

---

* Section 205(e) of the Act contained a one-year period of limitation upon suits by the Price Administrator for treble damages. 56 Stat. 34, 50 U.S.C.A.Appendix, § 925(e).

submitted to the District Court an affidavit, to which was attached the aforesaid "Confession of Judgment." The affidavit recited that J. J. Schmitt & Co., Inc., had paid $2,500 on account and that there was then due and owing to the Price Administrator by virtue of said Confession of Judgment the sum of $10,000, no part of which had been paid. Wherefore, deponent prayed for judgment in favor of the Price Administrator in the sum of $10,000 and costs. On June 6, 1945, the District Court, upon the basis of the foregoing, entered judgment against J. J. Schmitt & Co., Inc., in the sum of $10,000.

Subsequently J. J. Schmitt & Co., Inc., moved that the judgment for $10,000 be vacated. The District Court entered an order denying the motion to vacate on February 21, 1948. We gather from the opinion filed by the District Court on the motion to vacate that the motion was based upon an asserted lack of jurisdiction in the District Court, either under the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, or under the Civil Practice Act of the State of New York, if applicable, to enter such a judgment by confession.

We are informed by complainant that it now has an appeal pending from the order of the District Court denying its motion to vacate the said judgment for $10,000.

■ We doubt very much whether this somewhat out-of-the-ordinary judgment upon confession of June 6, 1945, if otherwise validly entered, would in any wise be affected by any judgment which the Emergency Court of Appeals might enter with reference to the validity, during past periods of time, of RMPR 169 and RMPR 239. So far as appears, no stay of the judgment was applied for to await the outcome of the protest proceedings then pending. It may be inferred that the parties had worked out a compromise settlement of claims by the Price Administrator for treble damages, and that the so-called "Confession of judgment" was part of the "basis for the adjustment of the matters alleged in the complaint" referred to in the stipulation filed in the equity proceeding. The "Confession of Judgment" executed by J. J. Schmitt & Co., Inc., contains not the slightest indication that it was to be deemed contingent upon the outcome of possible future proceedings for the determination of the validity of RMPR 169 and RMPR 239. If, as we suspect, a judgment by the Emergency Court of Appeals on the merits, in the present proceeding, could not have any effect upon the aforesaid judgment entered upon confession, this, in itself, would be a sufficient ground for us to dismiss the present complaint as moot. But we need not rest our action upon this ground.

■ From what has been said, it is clear that no issue was raised in the protest proceeding as to the validity of the regulations upon the dates of the alleged violations which were involved in the settlement evidenced by the stipulation for a consent decree in the equity action and by the document called "Confession of Judgment." In fact, we do not know what those dates were, except that they were presumably some time within a year prior to February 28, 1944. We are without power, on a § 204(a) complaint, to consider an issue which was not raised in the protest proceeding. Furthermore, even the complaint now before us did not seek to raise such an issue. As previously stated, the complaint asked us to declare the regulations invalid "as they existed at the time of the filing of the protest," namely, October 24, 1944. We allowed an informal amendment of the complaint so as to cover the question of the validity of the regulation for the past period April 1, 1944, through August 19, 1944, involved in the then pending criminal proceedings, which have since been dismissed. It was not suggested, when we heard the case, that the validity of the regulations during any earlier period might still be involved. The judgment by confession, which complainant seizes upon to keep the present case alive, was entered June 6, 1945. Yet complainant did not disclose its existence either during the reopened protest proceedings or at the time of the argument before us on December 5, 1946. It is obvious that the issues raised on the complaint before us have become moot.

A judgment will be entered dismissing the complaint.