BOWLES v. J. J. SCHMITT & CO., Inc.

No. 47, Docket 21076.

United States Court of Appeals Second Circuit.

Nov. 8, 1948.

618

Edward Garfield, of New York City (Milton H. Friedman and George Clinton, Jr., both of Buffalo, N. Y., on the brief), for appellant.

Michael J. McMorrow, Asst. U. S. Atty., of Buffalo, N. Y. (George L. Grobe, U. S. Atty., of Buffalo, N. Y., on the brief), for appellee.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Defendant has appealed from two orders of the district court refusing to vacate a judgment against it for $10,000, entered upon its "Confession of Judgment." Execution of this document occurred as a step in the arrangements made between officials of the Office of Price Administration and the defendant to settle and adjust the latter's obligations resulting from its violation of maximum price regulations under the Emergency Price Control Act of 1942, § 205, 50 U.S.C.A.Appendix, § 925, affecting its business of slaughtering, dressing, and wholesaling veal and mutton carcasses and cuts, and processed meat products. The arrangements were concluded on February 28, 1944, at the Buffalo District Office of the OPA between the OPA's District Enforcement Attorneys and Julius J. Schmitt, defendant's president. Schmitt agreed to the Attorneys' demand of $20,000 as penalties for the violations, paid the sum of $7,500 at once, and agreed to pay the balance of $12,500 and to give a confession of judgment therefor on condition that it be not recorded and that he be allowed to pay this balance in installments. The Attorneys then drew up the document in question, which, as appears from the quotation in a footnote,[1] is in form an explicit confesssion of judgment for $12,500 in a named action in the district court, with authorization to the clerk for the entry

---

[1] The instrument, called "Confession of Judgment" in the record, has the heading, "United States of America, United States District Court, Western District of New York," with the names of the parties, "Chester Bowles, Administrator, Office of Price Administration, for and on behalf of the United States, Plaintiff, against J. J. Schmitt & Co. Inc., 175 Lewis Street, Buffalo, New York, Defendant, Civil Action File No. ——"; it then continues:

"The above named defendant hereby confesses judgment in this action in favor of Chester Bowles, Administrator, Office of Price Administration, for and on behalf of the United States, the above named plaintiff, for the sum of $12,500.00, damages, this 28th day of February, 1944, and hereby authorizes the Clerk of the United States District Court to enter judgment against said defendant accordingly and/or the said plaintiff to take and have such other action, remedy or procedure, without notice to said defendant, to give effect to this confession and to enter and have judgment against said defendant for the amount mentioned in this confession and have execution therefor.

"Dated: Buffalo, New York, February 28, 1944.

"J. J. Schmitt & Co. Inc.,
"By [s] Julius J. Schmitt."

Then follow the affidavits of the District Enforcement Attorney and of Schmitt referred to in the text.

of judgment without notice. The instrument was not only signed on behalf of the defendant by Schmitt as president, but also contained an affidavit by David A. White, as the OPA "District Enforcement Attorney and Attorney for the plaintiff in the action," that he knew the facts and circumstances, that the defendant was justly and honestly indebted in the sum named, and that the confession was taken without intent to defraud; an affidavit by Schmitt himself, as defendant's president, of substantially similar tenor; and a further oath by Schmitt that he signed the document as president and affixed the corporate seal "by order of the Board of Directors of said corporation."

At the same time the Attorneys required of Schmitt that he agree to an injunction in order to make further violations punishable as contempt. Accordingly he and Mr. White signed a stipulation, supported by White's acknowledgment for the Administrator and his own affidavit of corporate authority, wherein he agreed to the entry of a consent decree and judgment granting the injunction relief as demanded by plaintiff. On the same day an action in the name of Chester Bowles, Administrator, Office of Price Administration, against the defendant was instituted upon a complaint charging generally the violation of specifically named maximum price regulations involving these meat products and demanding (1) a permanent injunction, set forth in the detail of the stipulation, against such violations and (2) "Such other, further or different relief in the premises as may seem just and proper to the Court." On the next day the court, through Judge Knight, filed a "final judgment" granting the injunction in the form prayed for, after a recital that the complaint had been filed, that the plaintiff and the defendant had "agreed upon a basis for the adjustment of the matters alleged in the complaint and the entry of a judgment in this action," and that they had entered into a stipulation for judgment, the original of which was being filed with the court.

This effectuated the immediate adjustment of the matters in dispute, which was the obvious objective of the parties.[2] Defendant did pay an additional $2,500 about March 2, 1945. On June 6, 1945, White, as Enforcement Attorney, moved for judgment on the confession for the balance, showing by affidavit that he had written defendant on April 23, 1945, demanding payment of the $10,000 still due and stating that judgment would be entered against it without further notice unless payment were made by May 23, 1945. On the same day Judge Knight entered the judgment here in question without notice to the defendant.

On June 8, 1945, defendant moved for an order vacating and setting aside the judgment and requiring the plaintiff to refund all sums paid "in connection with a purported confession of judgment." This was supported by the affidavit of Schmitt reciting the facts of execution of the document and payment of the additional $2,500, stating that he was informed by his attorney that the instrument was not a confession of judgment and did not comply with the New York state statutes, and adding further that his company had been obliged, after its signing, to borrow substantial sums of money in connection with the operation of its business and owed debts substantially larger than at the time of the execution of the paper. Shortly thereafter a creditor of the defendant, appearing by the same attorneys as did defendant, asked for an order permitting intervention for the purpose of making application to vacate the judgment. These motions were not pressed, and they appear to have been dropped from the court's calendar for nonappearance by the following fall.

On December 2, 1947, there was filed another motion on behalf of the same creditor for an order vacating the judg-

2 For other difficulties involving this defendant, see J. J. Schmitt & Co. v. Turney, Em.App., 169 F.2d 425, where a delayed appeal by defendant against the validity of these price regulations was dismissed as moot. In the course of its opinion the court therein describes the proceedings below, including the "Confession of Judgment," as leading up to a "somewhat out-of-the-ordinary judgment."

ment. Notwithstanding the delay the court, through Judge Burke, took notice of the original motions and in a considered decision held that there was jurisdiction to enter the judgment for $10,000 in the injunction action and denied the motions attacking it. Thereupon defendant made a motion for leave to renew its previous motion, accompanied by a petition, an affidavit of its counsel, and other supporting affidavits to show that the confession was made when no action was pending and was not designed as a part of the to-be-filed injunction action. This motion Judge Burke also denied on April 22, 1948; and thereafter defendant filed its appeal from the two orders refusing to vacate the judgment.

■ It will be noted that defendant's attack must be, as it is, entirely upon the jurisdiction of the court to enter the judgment as it did. If there was no issue of jurisdiction, the defendant had its full opportunity to attack the merits of the adjudication, by motion under Federal Rules of Civil Procedure, rule 60(b), 28 U.S.C.A., which, in both its original and its presently amended form (effective before the date of final action below), afforded an opportunity for full relief on the merits. As a matter of fact, defendant's original motion to vacate appears to have been at least an initial step that way, although it failed to specify an adequate ground for relief and it was suffered to be dropped for nonappearance, with no attempts at its revival for more than two years. Since the court, notwithstanding the delay, did consider the motion on the merits, we prefer to place our decision on a like basis. On the merits no reason appears why the engagement entered into by the defendant on February 28, 1944, should not be carried out by it. True, defendant in its brief in this court says broadly at the end that it "should be afforded an opportunity to interpose whatever defense it has, such as that the alleged confession was signed as the result of mistake, misrepresentation or even duress." Had it actually had such grounds to press, it could and should have presented them in its motion of June 8, 1945. Quite clearly this is only an afterthought for the purposes of argumentation, since none of

the motions and nothing in the record remotely suggests such a defense. In fact the various affidavits by the actors made both at the time of execution of the "Confession" and thereafter on the successive proceedings to vacate the judgment, including those of Schmitt himself, show the absence of any probable basis for such claim. The real objection therefore comes down to one to the form of the proceeding, so that a reversal would mean only that some new action should be initiated to reach a like result to that already achieved below. The claim for refund of the amount previously paid is obviously fantastic.

■ On the question of jurisdiction defendant asserts vigorously that judgment by confession is improper in any event in the federal courts, and in this case in particular for lack of adequate basis. It further asserts that the confession could have no connection with the civil action which had led to the order for the injunction. But we think these objections do not go to the heart of the issue of jurisdiction. There is no express provision in federal procedure for the entry of judgment on a confession by the clerk of court, such as is provided by N. Y. Civil Practice Act, § 540. Since this is a matter of procedure where the federal rules govern, there seems to be no reason for attempting to take over the state procedure and the federal rules appear to be inconsistent with it. Compare, however, Federal Deposit Ins. Corp. v. Steinman, D.C.E.D.Pa., 53 F.Supp. 644, 651. There are only two occasions under the rules when the clerk may enter final judgment without action of the judge or jury: one in certain kinds of defaults involving liquidating sums, under rule 55(b) (1), and the other upon notice of acceptance of an offer of judgment under rule 68. Compare rules 58, 77(c). While both of these may suggest some analogies to the present situation and perhaps indicate that the course followed was not so unique as the defendant asserts, yet neither is exactly applicable here and, what is more important, neither was resorted to by the district court. For there was no attempt at action by the clerk, only as a mere ministerial step as of course upon a default, as is the essence of the

---

modern statutory procedure by confession of judgment. 31 Am.Jur. Judgments, § 466; 49 C.J.S., Judgments, § 137. Each step taken below was by a district judge in the exercise of judicial judgment.

Hence there is no occasion to consider how far this confession would have fitted into the New York statutory procedure.[3] Nor do the present affidavits of the Enforcement Attorneys that they intended to draw the form of confession in accordance with the New York practice seem important. Whether or not they may have succeeded in complying with state law does not concern us. In any event we have a formal enforceable agreement or engagement of the parties, which in fact is directed to this particular district court. Indeed confusion may be avoided or lessened if the document is given some less technical or horrendous title, such as "Agreement for Judgment," instead of "Confession."

Again, the matter of the form of the action is stressed by defendant in a way which is unreal as a reference to the all-inclusive civil action under the rules. We have held in effect that an action can be started in favor of a new plaintiff without particular formalities so long as there is adequate service. Hackner v. Guaranty Trust Co. of New York, 2 Cir., 117 F.2d 95, certiorari denied 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520. And as is well known, the demand for judgment under F.R.C.P., rule 54(c), is not the strictly limiting factor against an appearing defendant that it may have been in some past procedures.[4] The one civil action of the rules has at times been likened to an envelope into which are dropped all the various claims over which the parties are at odds. It is not in keeping with this view to stress the injunction action as having only an isolated connection with the entire litigation between these parties or to emphasize such merely formal matters as a slight difference in designation of the plaintiff or the initial failure of a deputy clerk to give the motion and resulting judgment the file number of the earlier action.[5] Nor do we think it important or decisive that the Enforcement Attorneys have now given affidavits saying that the confession was executed before and without reference to any pending action. After all, that is surely obvious; defendant wanted to avoid the public notice involved in the entry of a large judgment against it and obtained that grace upon its promise to pay by installments. But clearly the whole intent of the arrangement was that the instrument should have effect when necessary to enforce its obligation.

The real question, as we see it, is as to whether the jurisdiction acquired over the defendant in the initial suit may be considered adequate to support the later proceedings against it as against an attack for want of jurisdiction. And we

---

[3] Thus a statement of facts out of which the debt arose is required under N.Y.C.P.A. § 541, but only creditors may object to a deficiency in this regard, Magalhaes v. Magalhaes, 254 App.Div. 880, 5 N.Y.S.2d 43—thus explaining the motion and petition to intervene by a creditor here. Moreover, the New York procedure is held not to extend to tort cases, although the common-law procedure by cognovit after action brought did. Franklin v. Muckley, 189 Misc. 155, 70 N.Y.S. 2d 815; Burkham v. Van Saun, 14 Abb. Pr.N.S. 163; 49 C.J.S., Judgments, § 142.

[4] This settles the rule—left in some confusion in some code states, Clark, Code Pleading, 2d Ed.1947, 265–271—that the demand for judgment is not restrictive where the defendant has appeared and moved for judgment. There still may be a question, in view of the language of rule 55(a), whether it is restrictive when

there is a default other than for nonappearance. See 3 Moore, Federal Practice, 3159, answering, somewhat reluctantly, in the affirmative, with Peitzman v. City of Illmo, 8 Cir., 141 F.2d 956, certiorari denied 323 U.S. 718, 65 S.Ct. 47, 89 L.Ed. 577, contra.

[5] In the caption to the "Confession" the description of Bowles as "Administrator, Office of Price Administration," was supplemented with the words "for and on behalf of the United States," and the judgment of June 6, 1945, so decrees recovery—quite properly, it would seem, in view of the monetary recovery. When the proceedings for this judgment were filed, a deputy clerk now deceased marked them without a definite file number beyond the words "Misc. Files"; later they were given the file number of the injunction action.

do not see adequate grounds for holding that it does not. In general, jurisdiction can be granted by consent and by a consent given prior to the bringing of an action. Gilbert v. Burnstine, 255 N.Y. 348, 355, 356, 174 N.E. 706, 73 A.L.R. 1453, citing and quoting authorities; Restatement, Judgments, § 18 and comment e. Indeed, it would seem that a defendant might make an agreement sufficiently detailed and exact that the very agreement itself should be taken as the process for the institution of suit. In other words waiver might perhaps have gone further than appears to have been the intent of the parties here. Compare Federal Deposit Ins. Corp. v. Steinman, supra, 53 F.Supp. 644, 651, 652. Of course in the federal courts subject matter jurisdiction cannot be waived by the parties;[6] but clearly, as the injunction suit shows, all the elements of jurisdiction were here present. The real question, as we see it, is not the formal wording of the suit or even the present afterthoughts of the Enforcement Attorneys, but what the defendant, through its president, must be reasonably held to have expected from the execution of the document. There can be no escape from the conclusion that Schmitt intended to agree to a judgment for OPA violations in favor of Bowles, the Administrator, against his company in a suit in this district court. And such a suit was thereafter commenced, with its claim for and adjudication of a continuing injunction and its reference to such other and further relief as might seem just and proper to the court. These actions speak louder than the later rationalizations of the parties. The intent disclosed in this document was that it should be given effect in a definite action with relation to this subject matter in this particular federal court. When such an action was brought, this judgment—of which of course the defendant had immediate notice and opportunity to challenge for cause—was to be expected upon a

default in payment of the amount due. We think there was no such absence of jurisdiction as to render the judgment void.

Orders affirmed.

[6] Judgments from state courts of general jurisdiction on confession by nonresidents are given full faith and credit and upheld elsewhere, whatever the local procedure. Monarch Refrigerating Co. v. Farmers' Peanut Co., 4 Cir., 74 F.2d 790, certiorari denied Farmers' Peanut Co. v. Monarch Refrigerating Co., 295 U.S. 732, 55 S.Ct. 643, 79 L.Ed. 1680; Withers v. Starace, D.C.E.D.N.Y., 22 F. Supp. 773; Silver v. Smith, Sup., 70 N. Y.S.2d 122; annotations in 40 A.L.R. 441 and 84 A.L.R. 1503.