# NATIONAL EQUIPMENT RENTAL, LTD., v. SZUKHENT ET AL.

No. 81.   Argued November 20, 1963.—Decided January 6, 1964.

*Wilbur G. Silverman* argued the cause and filed a brief for petitioner.

*Harry R. Schwartz* argued the cause and filed a brief for respondents.

*David Hartfield, Jr., Allen F. Maulsby, Benjamin C. Milner III, Merrell E. Clark, Jr.* and *Henry L. King* filed a brief for the Bankers Trust Co. et al., as *amici curiae,* urging reversal.

MR. JUSTICE STEWART delivered the opinion of the Court.

The Federal Rules of Civil Procedure provide that service of process upon an individual may be made "by delivering a copy of the summons and of the complaint to an agent authorized by appointment . . . to receive service of process." [1] The petitioner is a corporation with

---

[1] Federal Rule of Civil Procedure 4 (d) provides, in pertinent part:

"(d) SUMMONS: PERSONAL SERVICE. The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:

"(1) Upon an individual other than an infant or an·incompetent person, by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion

its principal place of business in New York. It sued the respondents, residents of Michigan, in a New York federal court, claiming that the respondents had defaulted under a farm equipment lease. The only question now before us is whether the person upon whom the summons and complaint were served was "an agent authorized by appointment" to receive the same, so as to subject the respondents to the jurisdiction of the federal court in New York.[2]

The respondents obtained certain farm equipment from the petitioner under a lease executed in 1961. The lease was on a printed form less than a page and a half in length, and consisted of 18 numbered paragraphs. The last numbered paragraph, appearing just above the respondents' signatures and printed in the same type used in the remainder of the instrument, provided that "the Lessee hereby designates Florence Weinberg, 47–21 Forty-first Street, Long Island City, N. Y., as agent for the purpose of accepting service of any process within the State of New York." [3] The respondents were not acquainted with Florence Weinberg.

---

then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process."

[2] No questions of subject matter jurisdiction or of venue are presented. Federal jurisdiction exists by reason of diversity of citizenship. 28 U. S. C. § 1332. Venue in the United States District Court for the Eastern District of New York has not been contested. 28 U. S. C. § 1391.

[3] The paragraph in its entirety read as follows:

"This agreement shall be deemed to have been made in Nassau County, New York, regardless of the order in which the signatures of the parties shall be affixed hereto, and shall be interpreted, and the rights and liabilities of the parties here determined, in accordance with the laws of the State of New York; and the Lessee hereby designates Florence Weinberg, 47–21 Forty-first Street, Long Island City, N. Y., as agent for the purpose of accepting service of any process within the State of New York."

In 1962 the petitioner commenced the present action by filing in the federal court in New York a complaint which alleged that the respondents had failed to make any of the periodic payments specified by the lease. The Marshal delivered two copies of the summons and complaint to Florence Weinberg. That same day she mailed the summons and complaint to the respondents, together with a letter stating that the documents had been served upon her as the respondents' agent for the purpose of accepting service of process in New York, in accordance with the agreement contained in the lease.[4] The petitioner itself also notified the respondents by certified mail of the service of process upon Florence Weinberg.

Upon motion of the respondents, the District Court quashed service of the summons and complaint, holding that, although Florence Weinberg had promptly notified the respondents of the service of process and mailed copies of the summons and complaint to them, the lease agreement itself had not explicitly required her to do so, and there was therefore a "failure of the agency arrangement to achieve intrinsic and continuing reality." 30 F. R. D. 3, 5. The Court of Appeals affirmed, 311 F. 2d 79, and we granted certiorari, 372 U. S. 974. For the reasons stated in this opinion, we have concluded that Florence Weinberg was "an agent authorized by appointment . . . to receive service of process," and accordingly we reverse the judgment before us.

---

[4] The complaint, summons, and covering letter were sent by certified mail, and the letter read as follows:

"Gentlemen:

"Please take notice that the enclosed Summons and Complaint was duly served upon me this day by the United States Marshal, as your agent for the purpose of accepting service of process within the State of New York, in accordance with your contract with National Equipment Rental, Ltd.

"Very truly yours,

"Florence Weinberg"

We need not and do not in this case reach the situation where no personal notice has been given to the defendant. Since the respondents did in fact receive complete and timely notice of the lawsuit pending against them, no due process claim has been made. The case before us is therefore quite different from cases where there was no actual notice, such as *Schroeder* v. *City of New York,* 371 U. S. 208; *Walker* v. *Hutchinson City,* 352 U. S. 112; and *Mullane* v. *Central Hanover Tr. Co.,* 339 U. S. 306. Similarly, as the Court of Appeals recognized, this Court's decision in *Wuchter* v. *Pizzutti,* 276 U. S. 13, is inapposite here. In that case a state nonresident motorist statute which failed to provide explicitly for communication of notice was held unconstitutional, despite the fact that notice had been given to the defendant in that particular case. *Wuchter* dealt with the limitations imposed by the Fourteenth Amendment upon a statutory scheme by which a State attempts to subject nonresident individuals to the jurisdiction of its courts. The question presented here, on the other hand, is whether a party to a private contract may appoint an agent to receive service of process within the meaning of Federal Rule of Civil Procedure 4 (d)(1), where the agent is not personally known to the party, and where the agent has not expressly undertaken to transmit notice to the party.

The purpose underlying the contractual provision here at issue seems clear. The clause was inserted by the petitioner and agreed to by the respondents in order to assure that any litigation under the lease should be conducted in the State of New York. The contract specifically provided that "This agreement shall be deemed to have been made in Nassau County, New York, regardless of the order in which the signatures of the parties shall be affixed hereto, and shall be interpreted, and the rights and liabilities of the parties here determined, in accordance with the laws of the State of New York." And it is settled,

as the courts below recognized, that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether. See, *e. g., Kenny Construction Co.* v. *Allen,* 248 F. 2d 656 (C. A. D. C. Cir. 1957); *Bowles* v. *Schmitt & Co., Inc.,* 170 F. 2d 617 (C. A. 2d Cir. 1948); *Gilbert* v. *Burnstine,* 255 N. Y. 348, 174 N. E. 706 (1931).

Under well-settled general principles of the law of agency, Florence Weinberg's prompt acceptance and transmittal to the respondents of the summons and complaint pursuant to the authorization was itself sufficient to validate the agency, even though there was no explicit previous promise on her part to do so. "The principal's authorization may neither expressly nor impliedly request any expression of assent by the agent as a condition of the authority, and in such a case any exercise of power by the agent within the scope of the authorization, during the term for which it was given, or within a reasonable time if no fixed term was mentioned, will bind the principal." 2 Williston on Contracts (3d ed. 1959), § 274.

We deal here with a Federal Rule, applicable to federal courts in all 50 States. But even if we were to assume that this uniform federal standard should give way to contrary local policies, there is no relevant concept of state law which would invalidate the agency here at issue. In Michigan, where the respondents reside, the statute which validates service of process under the circumstances present in this case contains no provision requiring that the appointed agent expressly undertake to notify the principal of the service of process.[5] Similarly, New York law, which it was agreed should be applicable to the lease provisions, does not require any such express promise by the agent in order to create a valid agency for receipt of

---

[5] Mich. Stat. Ann., 1962, § 27A.1930.

process. The New York statutory short form of general power of attorney, which specifically includes the power to accept service of process,[6] is entirely silent as to any such requirement.[7] Indeed, the identical contractual provision at issue here has been held by a New York court to create a valid agency for service of process under the law of that State. *National Equipment Rental* v. *Graphic Art Designers,* 36 Misc. 2d 442, 234 N. Y. S. 2d 61.[8]

It is argued, finally, that the agency sought to be created in this case was invalid because Florence Weinberg may have had a conflict of interest. This argument is based upon the fact that she was not personally known to the respondents at the time of her appointment and upon a suggestion in the record that she may be related to an officer of the petitioner corporation. But such a contention ignores the narrowly limited nature of the agency here involved. Florence Weinberg was appointed the respondents' agent for the single purpose of receiving service of process. An agent with authority so limited can in no meaningful sense be deemed to have had an interest antagonistic to the respondents, since both the

---

[6] McKinney's N. Y. Laws, General Business Law, § 229 (6).

[7] McKinney's N. Y. Laws, General Business Law, § 220.

[8] It is argued that the state court decisions upholding the agency designation here at issue would have been different if the case of *Rosenthal* v. *United Transp. Co.,* 196 App. Div. 540, 188 N. Y. S. 154, had been brought to the attention of the courts. *Rosenthal* interpreted the forerunner of § 227 of the Civil Practice Act, Gilbert-Bliss' N. Y. Civ. Prac., Vol. 3A, 1942, § 227 (1963 Supp.), which creates a procedure whereby a resident of New York may appoint an agent for the receipt of process by designation of a person to receive service and the filing thereof with the County Clerk. The *Rosenthal* case is entirely inapposite, because § 227 clearly applies only to residents of New York who leave the State, and even as to them, the provision is permissive rather than exclusive. *Phillips* v. *Garramone,* 36 Misc. 2d 1041, 233 N. Y. S. 2d 842; *Torre* v. *Grasso,* 11 Misc. 2d 275, 173 N. Y. S. 2d 828.

petitioner and the respondents had an equal interest in assuring that, in the event of litigation, the latter be given that adequate and timely. notice which is a prerequisite to a valid judgment.[9]

A different case would be presented if Florence Weinberg had not given prompt notice to the respondents, for then the claim might well be made that her failure to do so had operated to invalidate the agency. We hold only that, prompt notice to the respondents having been given, Florence Weinberg was their "agent authorized by appointment" to receive process within the meaning of Federal Rule of Civil Procedure 4 (d)(1).

The judgment of the Court of Appeals is reversed and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

Mr. Justice Black, dissenting.

The petitioner, National Equipment Rental, Ltd., is a Delaware corporation with its principal place of business in greater New York City. From that location it does a nationwide equipment rental business. The respondents,

---

[9] There is no allegation that Weinberg had any pecuniary interest in the subject matter of the litigation. Nor is the issue here the applicability of a statute which permits service on a foreign corporation by service on persons who are generally authorized to act as agents of the corporation, when the agent upon whom service is made has a personal interest in suppressing notice of service: see, *e. g., John W. Masury & Son* v. *Lowther,* 299 Mich. 516, 300 N. W. 866 (1941) (involving a garnishment proceeding in which service under such a statute was attempted upon that employee of the foreign corporation who had incurred the debt on which the suit was based, who therefore had a personal interest in concealing from his employer the fact of service, and who did not notify the employer that service had been made). See *Hartsock* v. *Commodity Credit Corp.,* 10 F. R. D. 181, also involving a situation where the agent "sustains such a relation to plaintiff or the claim in suit as to make it to his interest to suppress the fact of service . . . ." 10 F. R. D., at 184.

Steve and Robert Szukhent, father and son farming in Michigan, leased from National two incubators for their farm, signing in Michigan a lease contract which was a standard printed form obviously prepared by the New York company's lawyers. Included in the 18 paragraphs of fine print was the following provision:

> ". . . the Lessee hereby designates Florence Weinberg, 47–21 Forty-first Street, Long Island City, N. Y., as agent for the purpose of accepting service of any process within the State of New York."

The New York company later brought this suit for breach of the lease in the United States District Court for the Eastern District of New York. Rule 4 (d)(1) of the Federal Rules of Civil Procedure authorizes service of process for suits in federal courts to be made on "an agent authorized by appointment or by law to receive service of process." Process was served on Mrs. Weinberg as "agent" of the Michigan farmers. She mailed notice of this service to the Szukhents. A New York lawyer appeared especially for them and moved to quash the service on the ground that Mrs. Weinberg was not their agent but was in reality the agent of the New York company.

The record on the motion to quash shows that the Szukhents had never had any dealings with Mrs. Weinberg, their supposed agent. They had never met, seen, or heard of her. She did not sign the lease, was not a party to it, received no compensation from the Szukhents, and undertook no obligation to them. In fact, she was handpicked by the New York company to accept service of process in any suits that might thereafter be filed by the company. Only after this suit was brought was it reluctantly revealed that Mrs. Weinberg was in truth the wife of one of the company's officers. The district judge, applying New York law to these facts, held that there had been no effective appointment of Mrs. Weinberg as agent of the Szukhents, that the service on her as their

"agent" was therefore invalid, and that the service should be quashed. 30 F. R. D. 3 (D. C. E. D. N. Y.). The Court of Appeals, one judge dissenting, affirmed, agreeing that no valid agency had been created. 311 F. 2d 79 (C. A. 2d Cir.).[1] This Court now reverses both courts below and holds that the contractual provision purporting to appoint Mrs. Weinberg as agent is valid and that service of process on her as agent was therefore valid and effective under Rule 4 (d)(1) as on an "agent authorized by appointment . . . to receive service of process." I disagree with that holding, believing that (1) whether Mrs. Weinberg was a valid agent upon whom service could validly be effected under Rule 4 (d)(1) should be determined under New York law and that we should accept the holdings of the federal district judge and the Court of Appeals sitting in New York that under that State's law the purported appointment of Mrs. Weinberg was invalid and ineffective; (2) if, however, Rule 4 (d)(1) is to be read as calling upon us to formulate a new federal definition of agency for purposes of service of process, I think our formulation should exclude Mrs. Weinberg from the category of an "agent authorized by appointment . . . to receive service of process"; and (3) upholding service of process in this case raises serious questions as to whether these Michigan farmers have been denied due process of law in violation of the Fifth and Fourteenth Amendments.

## I.

No federal statute has undertaken to regulate the sort of agency transaction here involved.[2] There is only Rule 4 (d)(1), which says nothing more than that in federal

[1] Both the District Court and the Court of Appeals also rested their decisions on the contract's lack of provision for notice of the service of process.

[2] Of course, Congress would not lack power to regulate at least some aspects of contracts like this one. Cf. *United States* v. *South-Eastern Underwriters Assn.*, 322 U. S. 533.

courts personal jurisdiction may be obtained by service on an "agent." The Rule does not attempt to define who is an "agent." To me it is evident that the draftsmen of the Rules did not, by using the word "agent," show any intention of throwing out the traditional body of state law and creating a new and different federal doctrine in this branch of the law of agency. Therefore, it is to the law of New York—the State where this action was brought in federal court, the place where the contract was deemed by the parties to have been made, and the State the law of which was specified as determining rights and liabilities under the contract [3]—that we should turn to test the validity of the appointment.[4]

I agree with the district judge that this agency is invalid under the laws of New York. The highest state court that has passed on the question has held that, because of New York statutes, the designation by a nonresident of New York of an agent to receive service of process is ineffective; the court, in denying an order for interpleader, held that only residents of New York can make such an appointment, and even then only in compliance with the terms of the controlling statute. *Rosenthal* v. *United Transp. Co.,* 196 App. Div. 540, 188 N. Y. S. 154. Even the dissenting judge in the Court of Appeals in the present case acknowledged that the purported appointment of

---

[3] This is not to suggest that a contractual stipulation as to what state law should govern would necessarily be binding on state courts which did not choose to recognize it, including the courts of Michigan, where the Szukhents lived, signed the lease contract, and received the leased property. See *Watson* v. *Employers Liability Assurance Corp.,* 348 U. S. 66; see also *Clay* v. *Sun Ins. Office Ltd.,* 363 U. S. 207, 213 (dissenting opinion); *Order of United Commercial Travelers of America* v. *Wolfe,* 331 U. S. 586, 625 (dissenting opinion).

[4] If New York would look in turn to the law of Michigan, the place where the contract was signed by the Szukhents and was to be performed, then we should do the same. Cf. *Klaxon Co.* v. *Stentor Elec. Mfg. Co.,* 313 U. S. 487.

Mrs. Weinberg "would not subject the defendants to the jurisdiction of the courts of the State of New York." The company cites three decisions of trial judges in two of New York's 62 counties which have upheld service upon purported agents in circumstances like these.[5] In fact, two of those cases, both decided in Nassau County, where the company does business, upheld service on this same Mrs. Weinberg as "agent" in suits brought for breach of contract by this same company, one against a defendant living in the distant State of California. But these trial courts did not even mention the *Rosenthal* case, decided by a higher court, and in fact cited no higher court opinions at all which dealt with the question here raised. In seeking to apply New York's definition of "agent" we should follow the considered opinions of the highest appellate courts which have passed upon the question, not unexamined decisions of trial courts. In so doing, we see that under New York law this service of process is invalid. Also, we should accept the view of the question taken by the federal courts sitting in the State whose law is being applied unless we are shown "clearly and convincingly" that these courts erred.[6] Here there is no showing that the Court of Appeals—where neither the majority nor the dissenter disputed the District Court's view of New York law—has erred.[7]

---

[5] *National Equipment Rental, Ltd.,* v. *Graphic Art Designers, Inc.,* 36 Misc. 2d 442, 234 N. Y. S. 2d 61 (Sup. Ct., Nassau County); *National Equipment Rental, Ltd.,* v. *Boright,* N. Y. L. J., July 17, 1962, p. 8, col. 8 (Sup. Ct., Nassau County); *Emerson Radio & Phonograph Corp.* v. *Eskind,* 32 Misc. 2d 1038, 228 N. Y. S. 2d 841 (Sup. Ct., N. Y. County).

[6] *Helvering* v. *Stuart,* 317 U. S. 154, 164; see also *United States* v. *Durham Lumber Co.,* 363 U. S. 522, 526–527; *Propper* v. *Clark,* 337 U. S. 472, 486–487.

[7] Since New York would not hold Mrs. Weinberg a valid agent to receive service of process, service cannot be upheld as authorized by that part of Rule 4 (d) (7) which validates service "in the manner prescribed by the law of the state."

## II.

If Rule 4 (d)(1) is to be read as requiring this Court to formulate new federal standards of agency to be resolved in each case as a federal question, rather than as leaving the question to state law, I think the standards we formulate should clearly and unequivocally denounce as invalid any alleged service of process on nonresidents based on purported agency contracts having no more substance than that naming Mrs. Weinberg.

*A.* In the first place, we should interpret the federal rule as contemplating a genuine agent, not a sham.[8] Here the "agent," Mrs. Weinberg, was unknown to respondents. She was chosen by the New York company, was under its supervision, and, indeed, was the wife of one of its officers—facts no one ever told these farmers.[9] State courts in general quite properly refuse to uphold service of process on an agent who, though otherwise competent, has interests antagonistic to those of the person he is meant to represent.[10] In Michigan, the place where the contract here involved was signed and where the machinery was delivered, the State Supreme Court has said that to hold otherwise would open "wide the door for the perpetration of fraud and maladministration of justice." [11] There is no reason for a federal rule to tolerate a less punctilious regard for fair dealing in a matter so very important to a person being sued. I cannot believe that Rule 4 (d)(1), which may under some cir-

---

[8] See *Szabo* v. *Keeshin Motor Express Co.*, 10 F. R. D. 275 (D. C. N. D. Ohio); *Fleming* v. *Malouf*, 7 F. R. D. 56 (D. C. W. D. N. Y.).

[9] Apparently the district judge asked the company to supply particulars of Mrs. Weinberg's relationship to the company, but this information was never furnished. For all that appears, she may be a stockholder or director of the company.

[10] See cases collected in 72 C. J. S., Process § 50.

[11] *John W. Masury & Son* v. *Lowther*, 299 Mich. 516, 525, 300 N. W. 866, 870.

cumstances be used to subject people to jurisdiction thousands of miles from home, was ever meant to bring a defendant into court by allowing service on an "agent" whose true loyalty is not to the person being sued but to the one bringing suit. The Canons of Ethics forbid a lawyer to serve conflicting parties, at least without express consent given after full disclosure.[12] If we are to create a federal standard, I would hold a 4 (d)(1) agent to a like duty. Furthermore, as the courts below pointed out, there was no provision in the contract assuring the defendants of notice of any action brought against them in New York, and no undertaking by their purported agent or anyone else to notify them. It is true that actual notice was given. But there is a prophylactic value, especially where contracts of this kind can in future cases be used to impose on a nonresident defendant, in requiring that the contract provide for notice in the first place. We have, on due process grounds, required as much of state statutes which declare a statutory agent for substituted service on nonresidents. *Wuchter* v. *Pizzutti,* 276 U. S. 13.

*B.* But even if this contract had named a disinterested agent and required that notice of service be given to the Szukhents, I think that any federal standards we formulate under Rule 4 (d)(1) should invalidate purported service of process in the circumstances of cases like this one. To give effect to the clause about service of process in this standardized form contract amounts to a holding that when the Szukhents leased these incubators they then and there, long in advance of any existing justiciable dispute or controversy, effectively waived all objection to the jurisdiction of a court in a distant State the process of which could not otherwise reach them. Both the nature of the right given up and the nature of the contractual

---

[12] Canon of Ethics 6.

relation here make such an application of the contract impossible to square with the context of American law in which Rule 4 (d)(1) was written. The right to have a case tried locally and be spared the likely injustice of having to litigate in a distant or burdensome forum is as ancient as the Magna Charta.[13] States generally have refused to enforce agreements in notes purporting to consent to foreign jurisdiction along with consent to confession of judgment, sometimes because such provisions are outlawed by statutes [14] and sometimes because they are outlawed by courts in the absence of specific statutory prohibitions.[15] In countless cases courts have refused to allow insurance companies to arrange that suits against them on their policies may be brought only at the home office of the company.[16] And prior decisions of our own

[13] Magna Charta, cc. 17–19:

"17. Common Pleas shall not follow our Court, but shall be held in any certain place.

"18. Trials upon the Writs of Novel Disseisin, of Mort d'Ancestre (death of the ancestor), and Darrien Presentment (last presentation) shall not be taken but in their proper counties, and in this manner:— We, or our Chief Justiciary, if we are out of the kingdom, will send two Justiciaries into each county, four times in the year, who, with four Knights of each county, chosen by the county, shall hold the aforesaid assizes, within the county on the day, and at the place appointed.

"19. And if the aforesaid assizes cannot be taken on the day of the county-court, let as many knights and freeholders, of those who were present at the county-court remain behind, as shall be sufficient to do justice, according to the great or less importance of the business." Reprinted in S. Doc. No. 232, 66th Cong., 2d Sess.

[14] E. g., Ind. Stat., 1933, § 2–2904; Mass. Gen. Laws, 1956, c. 231, § 13A.

[15] E. g., Farquhar & Co. v. Dehaven, 70 W. Va. 738, 75 S. E. 65; see also Hamilton v. Schoenberger, 47 Iowa 385.

[16] E. g., Nute v. Hamilton Mut. Ins. Co., 6 Gray (72 Mass.) 174; Slocum v. Western Assur. Co., 42 F. 235 (D. C. S. D. N. Y.); see cases collected in 56 A. L. R. 2d 300, 312–316.

Court have gone to great lengths to avoid giving enforcement to such provisions. Compare *National Exchange Bank* v. *Wiley,* 195 U. S. 257; *Grover & Baker Sewing Machine Co.* v. *Radcliffe,* 137 U. S. 287.

*C.* Where one party, at its leisure and drawing upon expert legal advice, drafts a form contract, complete with waivers of rights and privileges by the other, it seems to me to defy common sense for this Court to formulate a federal rule designed to treat this as an agreement coolly negotiated and hammered out by equals. With respect to insurance contracts drawn this way this Court long ago said:

> "The phraseology of contracts of insurance is that chosen by the insurer and the contract in fixed form is tendered to the prospective policy holder who is often without technical training, and who rarely accepts it with a lawyer at his elbow." *Aschenbrenner* v. *United States Fidelity & Guaranty Co.,* 292 U. S. 80, 84–85.[17]

It is hardly likely that these Michigan farmers, hiring farm equipment, were in any position to dicker over what terms went into the contract they signed. Yet holding this service effective inevitably will mean that the Szukhents must go nearly a thousand miles to a strange city, hire New York counsel, pay witnesses to travel there, pay their own and their witnesses' hotel bills, try to explain a dispute over a farm equipment lease to a New York judge or jury, and in other ways bear the burdens of litigation in a distant, and likely a strange, city. The company, of course, must have had this in mind when it put the clause in the contract. It doubtless hoped, by easing into its contract this innocent-looking provision for service of process in New York, to succeed in making it

---

[17] See also, *e. g., Bisso* v. *Inland Waterways Corp.,* 349 U. S. 85, 90–91; *Railroad Co.* v. *Lockwood,* 17 Wall. 357, 379–382.

as burdensome, disadvantageous, and expensive as possible for lessees to contest actions brought against them. This Court, in applying the doctrine of *forum non conveniens,* has suggested that "a plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary." *Gulf Oil Corp.* v. *Gilbert,* 330 U. S. 501, 507. What was there deemed to be a very unjust result is greatly aggravated, I think, by today's holding that a man can, by a cleverly drafted form, be successfully inveigled into giving up in advance of any controversy his traditional right to be served with process and sued at home. Rule 4 (d)(1), designed in part to preserve the right to have a case tried in a convenient tribunal, should not be used to formulate federal standards of agency that defeat this purpose.

It should be understood that the effect of the Court's holding is not simply to give courts sitting in New York jurisdiction over these Michigan farmers. It is also, as a practical matter, to guarantee that whenever the company wishes to sue someone who has contracted with it, it can, by force of this clause, confine all such suits to courts sitting in New York. This Court and others have frequently refused to hold valid a contract which, before any controversy has arisen, attempts to restrict jurisdiction to a single court or courts. See *Doyle* v. *Continental Ins. Co.,* 94 U. S. 535; *Insurance Co.* v. *Morse,* 20 Wall. 445, 451; *Nute* v. *Hamilton Mut. Ins. Co.,* 6 Gray (72 Mass.) 174; 6A Corbin, Contracts § 1445. Here this contract as effectively ousts the Michigan courts of jurisdiction as if it had said so. Today's holding disregards Michigan's interest in supervising the protection of rights of its citizens who never leave the State but are sued by foreign companies with which they have done business. Cf. *Travelers Health Assn.* v. *Virginia ex rel. State Corp. Comm'n,* 339 U. S. 643; *McGee* v. *International Life Ins. Co.,* 355 U. S. 220.

*D.* To formulate standards of agency under Rule 4 (d)(1) which allow a plaintiff with a form contract to extend a District Court's service of process for suits on that contract anywhere in the country (or, presumably, the world) is to do something which Congress has never done. Years ago Mr. Justice Brandeis, speaking for the Court, emphasized that Congress had always been reluctant to grant power to Federal District Courts to serve process outside the territorial borders of the State in which a District Court sits, saying:

> "[N]o act has come to our attention in which such power has been conferred in a proceeding in a circuit or district court where a private citizen is the sole defendant and where the plaintiff is at liberty to commence the suit in the district of which the defendant is an inhabitant or in which he can be found." *Robertson* v. *Railroad Labor Board,* 268 U. S. 619, 624–625. (Footnotes omitted.)

This Court should reject any construction of Rule 4(d)(1) or formulation of federal standards under it to help powerful litigants to achieve by unbargained take-it-or-leave-it contracts what Congress has consistently refused to permit by legislation.

The end result of today's holding is not difficult to foresee. Clauses like the one used against the Szukhents—clauses which companies have not inserted, I suspect, because they never dreamed a court would uphold them—will soon find their way into the "boilerplate" of everything from an equipment lease to a conditional sales contract. Today's holding gives a green light to every large company in this country to contrive contracts which declare with force of law that when such a company wants to sue someone with whom it does business, that individual must go and try to defend himself in some place, no matter how distant, where big business enterprises are

concentrated, like, for example, New York, Connecticut, or Illinois, or else suffer a default judgment. In this very case the Court holds that by this company's carefully prepared contractual clause the Szukhents must, to avoid a judgment rendered without a fair and full hearing, travel hundreds of miles across the continent, probably crippling their defense and certainly depleting what savings they may have, to try to defend themselves in a court sitting in New York City. I simply cannot believe that Congress, when by its silence it let Rule 4 (d)(1) go into effect, meant for that rule to be used as a means to achieve such a far-reaching, burdensome, and unjust result. Heretofore judicial good common sense has, on one ground or another, disregarded contractual provisions like this one, not encouraged them. It is a long trip from San Francisco—or from Honolulu or Anchorage—to New York, Boston, or Wilmington. And the trip can be very expensive, often costing more than it would simply to pay what is demanded. The very threat of such a suit can be used to force payment of alleged claims, even though they be wholly without merit. This fact will not be news to companies exerting their economic power to wangle such contracts. No statute and no rule requires this Court to place its imprimatur upon them. I would not.

### III.

The Court's holding that these Michigan residents are compelled to go to New York to defend themselves in a New York court brings sharply into focus constitutional questions as to whether they will thereby be denied due process of law in violation of the Fifth and Fourteenth Amendments. While implicit in much of the oral arguments and in the briefs, these questions have not been adequately discussed. The questions are serious and involve matters of both historical and practical importance. These things lead me to believe that this case should be

set down for reargument on these constitutional ques-
tions. Moreover, this Court might, after such arguments,
conclude that these constitutional questions are so sub-
stantial and weighty that the nonconstitutional issues
should be decided in favor of the Michigan defendants,
thereby making a constitutional decision unnecessary.
While I would prefer to await more informative constitu-
tional discussions before deciding these due process ques-
tions, the Court rules against a reargument. In this sit-
uation I am compelled now to reach, consider, and decide
the constitutional questions. My view is that the Court's
holding denies the Szukhents due process of law for the
following, among other, reasons.

It has been established constitutional doctrine since
*Pennoyer* v. *Neff*, 95 U. S. 714, was decided in 1878, that
a state court is without power to serve its process outside
the State's boundaries so as to compel a resident of an-
other State against his will to appear as a defendant in a
case where a personal judgment is sought against him.
This rule means that an individual has a constitutional
right not to be sued on such claims in the courts of any
State except his own without his consent. The prime
value of this constitutional right has not diminished since
*Pennoyer* v. *Neff* was decided. Our States have increased
from 38 to 50. Although improved methods of travel
have increased its speed and ameliorated its discomforts,
it can hardly be said that these almost miraculous im-
provements would make more palatable or constitutional
now than in 1878 a system of law that would compel a
man or woman from Hawaii, Alaska, or even Michigan to
travel to New York to defend against civil lawsuits
claiming a few hundred or thousand dollars growing out
of an ordinary commercial contract.

It can of course be argued with plausibility that the
*Pennoyer* constitutional rule has no applicability here
because the process served on the Szukhents ran from a

federal, not a state, court. But this case was in federal court solely because of the District Court's diversity jurisdiction. And in the absence of any overriding constitutional or congressional requirements the rights of the parties were to be preserved there as they would have been preserved in state courts.[18] Neither the Federal Constitution nor any federal statute requires that a person who could not constitutionally be compelled to submit himself to a state court's jurisdiction forfeits that constitutional right because he is sued in a Federal District Court acting for a state court solely by reason of the happenstance of diversity jurisdiction. The constant aim of federal courts, at least since *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, has been, so far as possible, to protect all the substantial rights of litigants in both courts alike. And surely the right of a person not to be dragged into the courts of a distant State to defend himself against a civil lawsuit cannot be dismissed as insubstantial. Happily, in considering this question we are not confronted with any congressional enactment designed to bring non-state residents into a Federal District Court passed pursuant to congressional power to establish a judicial system to hear federal questions under Article III of the Constitution, or its power to regulate commerce under Art. I, § 8, or any of the other constitutionally granted congressional powers; we are dealing only with its power to let federal courts try lawsuits when the litigants reside in different States. Whatever power Congress might have in these other areas to extend a District Court's power to serve process across state lines, such power does not, I think, provide sound argument to justify reliance upon diversity jurisdiction to destroy a man's constitutional right to have his civil lawsuit tried in his own State. The protection of such a right in cases growing out of local

---

[18] Cf. *Guaranty Trust Co.* v. *York,* 326 U. S. 99.

state lawsuits is the reason for and the heart of the *Pennoyer* constitutional doctrine relevant here.

The Court relies on the printed provision of the contract as a consent of the Szukhents to be sued in New York, making the *Pennoyer* rule inapplicable. In effect the Court treats the provision as a waiver of the Szukhents' constitutional right not to be compelled to go to a New York court to defend themselves against the company's claims.[19] This printed form provision buried in a multitude of words is too weak an imitation of a genuine agreement to be treated as a waiver of so important a constitutional safeguard as is the right to be sued at home. Waivers of constitutional rights to be effective, this Court has said, must be deliberately and understandingly made and can be established only by clear, unequivocal, and unambiguous language.[20] It strains credulity to suggest that these Michigan farmers ever read this contractual provision about Mrs. Weinberg and about "accepting service of any process within the State of New York." And it exhausts credulity to think that they or any other laymen reading these legalistic words would have known

[19] It may be that the Court intends its disclaimer of passing on venue of the New York Federal District Court to imply that the service on the Szukhents' "agent" might not after all compel them to go to New York to defend themselves against a default judgment, should they prevail on the discretion of the judge in New York to grant them a transfer of venue under 28 U. S. C. § 1404 (a). If so, apart from disregarding the trouble and expense which defendants would undergo in appearing and answering the complaint in New York and presenting evidence in hope of obtaining a discretionary change of venue, the Court's holding really would have no practical effect whatever. But the Court carefully refrains from holding that venue in New York could be successfully challenged, and consequently I must consider the statement in text to be correct.

[20] *Johnson* v. *Zerbst,* 304 U. S. 458, 464. See also, *e. g., Fay* v. *Noia,* 372 U. S. 391, 439; *Emspak* v. *United States,* 349 U. S. 190, 197–198; *Aetna Ins. Co.* v. *Kennedy ex rel. Bogash,* 301 U. S. 389, 393; *Hodges* v. *Easton,* 106 U. S. 408, 412.

or even suspected that they amounted to an agreement of the Szukhents to let the company sue them in New York should any controversy arise. This Court should not permit valuable constitutional rights to be destroyed by any such sharp contractual practices. The idea that there was a knowing consent of the Szukhents to be sued in the courts of New York is no more than a fiction—not even an amiable one at that.

I would affirm the judgment.

MR. JUSTICE BRENNAN, with whom THE CHIEF JUSTICE and MR. JUSTICE GOLDBERG join, dissenting.

I would affirm. In my view, federal standards and not state law must define who is "an agent authorized by appointment" within the meaning of Rule 4 (d)(1). See *Mississippi Pub. Corp.* v. *Murphree,* 326 U. S. 438, 445–446; *Bowles* v. *Schmitt & Co.,* 170 F. 2d 617, 620; 1 Barron and Holtzoff, Federal Practice (Wright rev. 1960), at 701. In formulating these standards I would, *first,* construe Rule 4 (d)(1) to deny validity to the appointment of a purported agent whose interests conflict with those of his supposed principal, see *Hartsock* v. *Commodity Credit Corp.,* 10 F. R. D. 181, 183. *Second,* I would require that the appointment include an explicit condition that the agent after service transmit the process forthwith to the principal. Although our decision in *Wuchter* v. *Pizzutti,* 276 U. S. 13, dealt with the constitutionality of a state statute, the reasoning of that case is persuasive that, in fashioning a federal agency rule, we should engraft the same requirement upon Rule 4 (d)(1). *Third,* since the corporate plaintiff prepared the printed form contract, I would not hold the individual purchaser bound by the appointment without proof, in addition to his mere signature on the form, that the individual understandingly consented to be sued in a State not that of his residence. We must bear in mind what was said in *United States* v.

*Rumely,* 345 U. S. 41, 44, that we must strive not to be "that 'blind' Court, against which Mr. Chief Justice Taft admonished in a famous passage, . . . that does not see what '[a]ll others can see and understand.' " It offends common sense to treat a printed form which closes an installment sale as embodying terms to all of which the individual knowingly assented. The sales pitch aims solely at getting the signature on the form and wastes no time explaining or even mentioning the print. Before I would find that an individual purchaser has knowingly and intelligently consented to be sued in another State, I would require more proof of that fact than is provided by his mere signature on the form.

Since these standards were not satisfied in this case, the service of the summons and complaint was properly quashed.