**SAMBO'S RESTAURANTS, INC., a California Corporation, and Sambar Properties, Inc., a Delaware Corporation, Plaintiffs,**

**v.**

**The CITY OF ANN ARBOR, a Municipal Corporation, George W. Gardner, and G. M. Scofield, Defendants.**

**Civ. A. No. 9–70284.**

United States District Court,
E. D. Michigan, S. D.

May 4, 1979.

42

Stephen E. Dawson, James A. Samborn, Dickinson, Wright, McKean, Cudlip & Moon, Detroit, Mich., for plaintiffs.

R. Bruce Laidlaw, City Atty., Ann Arbor, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JULIAN ABELE COOK, Jr., District Judge.

On February 1, 1979, Sambo's Restaurants, Inc., and Sambar Properties, Inc. brought this action against the City of Ann Arbor and certain individually named Defendants, seeking declaratory and injunctive relief for alleged deprivation of their constitutional rights.[1]

The Court declined to enter a Temporary Restraining Order at that time, and on February 5, 1979, Plaintiffs moved for a Preliminary Injunction. The parties, thereafter, agreed to expedite the trial on the merits together with the hearing on Plaintiffs' injunctive requests, and to that end provided the Court with stipulated facts.[2]

The following summary of facts have been stipulated to by the parties:

In December, 1971, Plaintiff, Sambo's Restaurants, Inc., acting through its wholly-owned subsidiary, Restaurant Properties, Inc., applied to the City of Ann Arbor for site plan approval for the

---

1. 28 U.S.C.A. § 1331; § 1332; § 1343; 28 U.S.C.A § 2201; 42 U.S.C.A. § 1983.

2. At the hearing, Plaintiffs' counsel presented the Court with *Supplemental Stipulation of Facts.*

construction of a restaurant within the City limits.[3] The plan proposed by the Plaintiff complied with all applicable city ordinances and regulations.

In Ann Arbor, approval by the City Council is a condition precedent to construction of a restaurant.

At the November 13, 1972 meeting of the City Council, the "Sambo's" site plan was presented.[4] Upon its presentation, a member of the Ann Arbor City Council stated that he could not support approval of the plan on the basis of its 'name' and stated further that he would personally lead an economic boycott of the restaurant if opened under the name "Sambo's." The Mayor, and other Council members, supported the Councilman's position.

At the next City Council meeting, on November 21, 1972, Plaintiff, Sambo's Restaurant's, Inc., again acting through its wholly-owned subsidiary, Restaurant Properties, Inc., through its attorney, wrote on the official site plan that the name "Sambo's" "will not be used in regard to this restaurant." At the December 4, 1972 meeting, the site plan was approved by the City Council.

Subsequent to the Council's approval, Sambo's Restaurant constructed the restaurant and operated it under the name of "Jolly Tiger."[5] The restaurant was financially unsuccessful in its operation, losing more than $18,000.00 during the year 1978.

Unhappy with this monetary loss, Sambo's, through Michigan Signs, Inc., applied to the Ann Arbor Building Department for sign permits for two building signs to display the name "Sambo's." The sign permits were issued by the Ann Arbor Building Department on December 19, 1978. On December 28, 1978, the "Sambo's" signs were erected. Less than one week later, the Ann Arbor Building Department revoked the sign permits.[6]

Pending this Court's ruling, Defendants have agreed to take no further action to enforce the revocation, and Plaintiffs, in turn, have agreed to erect no further signs under the name "Sambo's."

I.

It is Plaintiffs contention that, based upon the "threats" of the City Councilman, and the support of these "threats" by the Mayor of Ann Arbor and other council members, Sambo's Restaurants, Inc. and Restaurant Properties "understood and believed that the site plan would not be approved by City Council . . . unless . . . the name "Sambo's" was not used in connection with the restaurant." Plaintiffs claim that they otherwise would not have promised to refrain from using the name "Sambo's."

Plaintiffs also state that they were lawfully issued sign permits by the Ann Arbor Building Department for two building signs displaying the name "Sambo's" but that the permits were promptly revoked.

With regard to the use of the name "Sambo's," Plaintiffs assert that more than one thousand restaurants in forty-seven states bear such name, that the name is not intended to be insulting, degrading or offensive, and that the name is registered with the United States Patent and Trademark Office.[7]

The Plaintiffs argue that conditioning site approval upon their agreement not to

---

3. The parties further stipulate that the *Ann Arbor City Ordinance Code* provides for this procedure.

4. Three other site plans were presented on that date; one was approved, and the two others, as well as Sambo's, were tabled.

5. In 1975, Sambo's Restaurants sold the restaurant to Sambar Properties, Inc. and leased it back for a term of 22 years. *Stipulation of Facts*, ¶ 28.

6. The Supplemental Stipulation of Facts provides:

 Institution of or continuation of threatened criminal or other sanctions to prohibit use of the name "Sambo's" will result in inestimable loss of good will and business reputation to Plaintiffs.

7. Further, the parties have stipulated to these facts. *Stipulation of Facts*, ¶¶ 3, 7.

use the name "Sambo's" and the revocation of their sign permits violates their First and Fourteenth Amendment rights. They argue further that the agreement is unenforceable because the City cannot condition a "public benefit" upon relinquishment of First Amendment rights, because the agreement lacks consideration, and because the agreement was induced by economic coercion.[8]

Defendants claim that "in Ann Arbor it is quite common for the Council to table the consideration of land development matters when individual members have questions they wish to resolve" . . . and that "such tabling action in no way indicates the ultimate action the Council will take regarding a matter."

Defendants assert that "when the question of the name was raised, Plaintiffs promptly and unequivocally promised not to use the name 'Sambo's' in connection with their business."

Defendants state that when the Plaintiffs instructed their attorney to add the agreement to the site plan and their representative appeared before the City Council and reported that the Plaintiffs had no intention of using the name, there was no indication that their actions were being taken under protest or duress.

Additionally, it is the Defendants' contention that when the Ann Arbor Building Department issued the sign permits, it was unaware of the restriction on the site plan.

The Defendants argue that the First Amendment does not preclude the regulation of a business name, that the Plaintiffs have waived the constitutional rights they now assert, that the Plaintiffs were not induced by economic coercion to enter into the agreement, and that the Plaintiffs' claims are barred by the statute of limitations and laches.[9]

## II.

Central to this Court's ruling today, is a careful understanding and examination of the facts leading to the agreement on the part of the Plaintiffs to refrain from using the name "Sambo's" at the restaurant site.

The Stipulation of Facts states as follows:

Based upon comments by City Council members and the Mayor of the City of Ann Arbor during the course of the November 13, 1972 meeting and other public meetings, the attorneys for Restaurant Properties, Inc. understood and believed that the site plan would not be approved by City Council unless Restaurant Properties agreed not to use the name "Sambo's" in connection with the restaurant. Restaurant Properties, Inc. and Sambo's Restaurants were so advised.

Therefore, Restaurant Properties, Inc., through its attorney, stated on the official site plan on November 21, 1972, that the name "Sambo's" will not be used in regard to this restaurant.[10]

Plaintiffs argue that a "public benefit," such as site plan approval may not be conditioned upon a relinquishment of First Amendment rights, and they insist that the "agreement" made by Sambo's in this case was induced by economic coercion.[11]

During the hearing in the instant cause, the Court, in an effort to better understand Plaintiffs' arguments, asked their counsel to "amplify the inducement" which Plaintiffs claim resulted in the agreement being made. In particular, this Court asked Plaintiffs' counsel *whether a vote had been taken by the City Council on the issue of the use of the name "Sambo's." Counsel responded in the negative.*

The Court further inquired of Plaintiffs' counsel as to why Plaintiffs failed to raise their constitutional claims in November, 1972, or thereabouts, when site approval was sought. Plaintiffs' counsel responded that to have done so at that time would have delayed the restaurant's opening. He

---

8. *Plaintiffs' Trial Memorandum*, pp. 2, 3.

9. *Defendants' Trial Brief*, pp. 1, 2, 3, 6, 7, 8.

10. *Stipulation of Facts*, ¶¶ 24, 25.

11. *Plaintiffs' Trial Memorandum*, pp. 7, 11.

went on to declare *"that the client thought, in a business decision, he might be able to proceed profitably under the name 'Jolly Tiger.' That proved to be erroneous, but rather than at that time offending the members of the City Council, going through a lawsuit in Court, they decided to, wrongly or rightly, to try and operate the restaurant under this alternative name."*

This Court finds that while the Plaintiffs claim to have believed that they would not gain approval of the site plan unless an agreement was made not to use the name "Sambo's," they were, in fact, never told by the Mayor or any other member of the Ann Arbor City Council that this was an essential prerequisite. In fact, the City Council never voted on the precise issue of the use of the name "Sambo's." Further, there is absolutely no evidence that the Plaintiffs ever requested the Council, directly or indirectly, to act upon their original site plan application which included the use of the "Sambo's" name. Additionally, as Plaintiffs themselves point out in their brief,[12] the Mayor of the City of Ann Arbor "initially recommended approval of the site plan because the City had no legal basis for denying it." [13]

■ The Court hereby finds Plaintiffs' contention that the approval of their site plan was conditioned upon the relinquishment of First Amendment rights, and that the agreement was induced by economic coercion [14] to be totally unsupported in the record.

12. *Plaintiffs' Trial Memorandum*, p. 1.

13. *Stipulation of Facts*, ⸙ 21.

14. The cases upon which Plaintiffs base their economic coercion theory are factually distinguishable from the instant action. In both *Gordon v. Village of Wayne*, 370 Mich. 329, 121 N.W.2d 823 (1963) and *Ridgemont Development Co. v. City of East Detroit*, 358 Mich. 387, 100 N.W.2d 301 (1960), the Court held that the requirement by the cities that the Plaintiffs provide the City with land (*Ridgemont, supra*) or money (*Gordon, supra*) as a condition precedent to site approval was unauthorized by local statute or ordinance and, therefore, a *compulsion.*

■ The Court must now comment upon the existence or non-existence of consideration supporting this agreement, bearing in mind the general rule that Courts do not inquire into the adequacy of consideration, and that any consideration, however slight, is legally sufficient to support a promise.[15]

■ Consideration can be defined as a right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other.[16]

■ Plaintiffs have furtively asserted that the City Council incurred no detriment in approving its site plan because it was under a legal duty to approve it; provided, however, that Plaintiffs had complied with local ordinances and regulations. As Plaintiffs correctly contend, under Michigan law, the performance of any existing legal obligation indeed does not constitute adequate consideration to support an agreement or contract.[17]

■ However, the consideration in this case need not be a detriment incurred by the Defendants, but can also be a benefit which accrued to the Plaintiffs. When Plaintiffs' site plan was first presented to the City Council, it was clear that one Councilman was opposed to the name. He threatened to lead an economic boycott if the restaurant opened under the name "Sambo's." Site approval was tabled until the next meeting. Plaintiff, Sambo's Restaurants, Inc., appeared at that meeting with the agreement written on the face of the plan, and the plan was thereafter promptly approved.

In the instant action, the Court has explicitly found that the City did not require the Plaintiffs to relinquish any rights or property before approval.

Furthermore, this Court has difficulty accepting an "economic coercion" argument from an entity with over 1,000 operating restaurants.

15. 17 Am.Jur.2d, *Contracts*, § 85.

16. 17 Am.Jur.2d, *Contracts*, § 85.

17. See, *Puett v. Walker*, 332 Mich 117, 50 N.W.2d 740 (1952); *Gordon v. Village of Wayne*, 370 Mich. 329, 121 N.W.2d 823 (1963).

What benefit, if any, accrued to the Plaintiff through its promise? First, it avoided further public discussion and/or arousement on the sensitive issue relating to the name "Sambo's"; second, it avoided any possibility of an economic boycott; third, Plaintiffs received a *speedy* site approval, enabling it to open their business without delay; and, fourth, as Plaintiffs' counsel told the Court, it avoided offending members of the City Council.

Based upon the foregoing, the Court hereby finds the agreement made by the Plaintiff, Sambo's Restaurants, Inc., to refrain from the use of the name "Sambo's" was, and is, supported by consideration.

### III.

The Court, having thus determined that site plan approval was not conditioned upon the relinquishment of any of Plaintiffs' rights, and that Plaintiffs were not acting under "economic coercion," and that Plaintiffs' agreement was supported by adequate consideration, will now consider the issue of waiver.

 The right to assert a constitutional right may be waived if the constitutional right involved is one which exists for the benefit or protection of the person or entity as to whom the waiver is claimed. Constitutional rights may be waived by acts, conduct, and/or by failure to act. Because the law imposes every reasonable presumption *against* the waiver of constitutional rights, waiver must appear by clear and positive proof. Whether or not an effective waiver exists must be determined in each case by an examination of the relevant facts.[18]

In *D. H. Overmyer Co., Inc. v. Frick Co.*, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1971), the Supreme Court discussed waiver of constitutional rights in a civil, as opposed to criminal context. In *Overmyer, id*, the Plaintiff, after defaulting on its first note to the Defendant, signed a second note which contained a "cognovit" provision, in conformity with Ohio law, whereby the Plaintiff, Overmyer Company agreed that

if it again defaulted in its payments the Defendant Frick Company could obtain judgment against Plaintiff *without notice or hearing*.

Thereafter, Overmyer, claiming that Frick was breaching the contract, stopped making payments, and Frick, under the "cognovit" provision and without personal service, caused judgment to be entered against Overmyer.

Plaintiff, Overmyer argued that its Fourteenth Amendment rights had been trammeled. The Supreme Court responded thusly:

The due process rights to notice and hearing prior to a civil judgment are subject to waiver. In *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, [84 S.Ct. 411, 11 L.Ed.2d 354] (1964), the Court observed:

"[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether." *Id.*, at 315–16 [84 S.Ct. 411, at 414].

And in *Boddie v. Connecticut, supra*, the Court acknowledged that "the hearing required by due process is subject to waiver." 401 U.S., [371] at 378–79, [91 S.Ct. [780], at 786, 28 L.Ed.2d 113.]

This, of course, parallels the recognition of waiver in the criminal context where personal liberty, rather than a property right, is involved. *Illinois v. Allen*, 397 U.S. 337, 342–343, [90 S.Ct. 1057, 1060, 25 L.Ed.2d 353] (1970) (right to be present at trial); *Miranda v. Arizona*, 384 U.S. 436, 444, [86 S.Ct. 1602, 1612, 16 L.Ed.2d 694] (1966) (rights to counsel and against compulsory self-incrimination); *Fay v. Noia*, 372 U.S. 391, 439 [83 S.Ct. 822, 849, 9 L.Ed.2d 837] (1963) (habeas corpus); *Rogers v. United States*, 340 U.S. 367, 371 [71 S.Ct. 438, 440, 95 L.Ed. 344] (1951) (right against compulsory self-incrimination).

Even if, for present purposes we assume that the standard for waiver in a corpo-

---

**18.** 16 C.J.S. *Constitutional Law*, § 89.

rate-property-right case of this kind is the same standard applicable to waiver in a criminal proceeding, that is, that it be voluntary, knowing, and intelligently made, *Brady v. United States,* 397 U.S. 742, 748, [90 S.Ct. 1463, 1468, 25 L.Ed.2d 747] (1970); *Miranda v. Arizona,* 384 U.S., at 444, [86 S.Ct. 1602, at 1612], or "an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst,* 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461] (1938); *Fay v. Noia,* 372 U.S., at 439, [83 S.Ct. 822, at 849], and even if, as the Court has said in the civil area, "[w]e do not presume acquiescence in the loss of fundamental rights," *Ohio Bell Tel. Co. v. Public Utilities Comm'n,* 301 U.S. 292, 307 [57 S.Ct. 724, 731, 81 L.Ed. 1093] (1937), that standard was fully satisfied here.

Overmyer is a corporation. Its corporate structure is complicated. Its activities are wide spread. As its counsel in the Ohio post-judgment proceeding stated, it has built many warehouses in many States and has been party to "tens of thousands of contracts with many contractors." This is not a case of unequal bargaining power or overreaching. The Overmyer-Frick agreement, from the start, was not a contract of adhesion. There was no refusal on Frick's part to deal with Overmyer unless Overmyer agreed to a cognovit. The initial contract between the two corporations contained no confession-of-judgment clause.

. . . . .

Overmyer may not have been able to predict with accuracy just how or when Frick would proceed under the confession clause if further default by Overmyer occurred, as it did, but this inability does not in itself militate against effective waiver.

. . . . .

We therefore hold that Overmyer, in its execution and delivery to Frick of the second installment note containing the cognovit provision, voluntarily, intelligently, and knowingly waived the rights it otherwise possessed to prejudgment notice and hearing, and that it did so with full awareness of the legal consequences. 405 U.S. at 185–187, 92 S.Ct. at 782–783.[19]

Plaintiffs argue that they have not waived their First Amendment rights, because the City Council could not lawfully condition site plan approval upon a waiver; and since the condition was "impermissible," the City can not now say that Plaintiffs waived their rights by complying with that condition.[20]

The Court, however, has determined that the City Council did *not* condition site plan approval upon Plaintiffs' agreement to refrain from using the name "Sambo's." Plaintiffs decided that they would refrain from such use.

Like the *Overmyer v. Frick* case, this is not a situation of unequal bargaining power, nor was there any explicit refusal on Ann Arbor's part to deal with "Sambo's" unless "Sambo's" agreed to open under another name.

At the time of site approval, Sambo's Restaurants, Inc. was represented by counsel and together with their counsel made a *business decision* to open under the alternative name of "Jolly Tiger." With over 1,000 restaurants in operation, Plaintiffs were undoubtedly quite experienced in site approval situations.

Not until the "Jolly Tiger" proved unprofitable, more than six years after the initial site plan was approved, do Plaintiffs bring their case to Court.

■ The Court hereby finds that Plaintiffs, through their conduct at the time of the site approval and subsequent thereto and through their explicit agreement, signed by their attorney on the site plan,

**19.** See, also, *Allied Artists Pictures Corp. v. Alford,* 410 F.Supp. 1348 (W.D.Tenn.1976); *United States v. Wynn,* 528 F.2d 1048 (5th Cir.1976); and *Northrip v. Federal National Mortgage Assoc.,* 372 F.Supp. 594 (E.D.Mich. 1974) (Keith, J.).

**20.** *Plaintiffs' Reply Brief in Response to Defendants' Trial Brief,* p. 6.

chose to waive their First Amendment rights and to open their restaurant as soon as possible. Having effectively and knowingly waived those rights, they cannot come to Court at this late hour and claim that those rights have been violated.

## IV.

Because the Court has found that Plaintiffs effectively waived the First and Fourteenth Amendment rights they now assert, and that the agreement made by the Plaintiffs does not fail for lack of adequate consideration, it is unnecessary to address the First Amendment issues raised by the parties.[21]

## V.

■ Defendant has counterclaimed against the Plaintiffs, claiming that, under Michigan law, the Plaintiffs have created a "nuisance per se." Additionally, Defendants allege that the action on the part of the Plaintiffs violates the nondiscrimination sections of the Ann Arbor City Code, as well as the City's affirmative action program. While this Court has discretion to exercise jurisdiction over Defendants' counterclaim, it will not do so. This is not a situation where application of state law *would, or could*, moot any of the issues decided by this Court today, constitutional or otherwise.[22] Therefore, the Court will not take jurisdiction of Defendants' counterclaim, and Defendants, if they seek to pursue such must do so in a state court.

## VI.

■ It is hereby ordered that the declaratory and injunctive relief sought by Plaintiffs is, and shall be, denied. Further, the revocation of the sign permits issued by the Ann Arbor Building Authority is upheld as consistent with the Plaintiffs' waiver and agreement to refrain from the use of the name "Sambo's" in connection with its restaurant in Ann Arbor.[23]

So ordered.

21. In *Sambo's of Ohio, Inc., et al. v. City Council of the City of Toledo,* 466 F.Supp. 177 (1979) the Court was presented with entirely different facts than the facts in the instant action. In *Sambo's of Ohio, supra,* the City Council passed an ordinance forbidding the use of the name "Sambo's" in connection with Plaintiff's business. Hence, Plaintiffs were explicitly denied site approval unless they changed their business name. Plaintiffs were unwilling to open under another name, and went to court. The Court, in its ruling, considered the City Council's rights to regulate speech vis-a-vis Plaintiff's important First Amendment rights.

22. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

23. The Court finds it unnecessary to deal with the sign permit issue in detail. In that the act of the Ann Arbor Building Department was *ultra vires,* since the site plan prohibited use of the name "Sambo's," the sign permits are invalid, and, hence, properly revoked.