**In the Matter of the Arbitration between RKO PICTURES, INC., a corporation, Appellant,**

**v.**

**Michael BARKLEY and Tim Hayes, Appellees**

**and**

**Michael P. Lombardi, and as Trustee for RKO "Plenty" Syndicate; Les Barkley; Kathy Maher; Ron Kubota; and Ronald Nelson, Defendants,**

**No. 75649.**

Court of Appeals of Oklahoma, Division No. 3.

Feb. 25, 1992.

Rehearings Denied April 7, 1992.

Certiorari Denied Oct. 1, 1992.

Thomas A. Mann, Tulsa, for appellant.

Stephen J. Rodolf and John D. Clayman, Tulsa, for appellee Michael Barkley.

George S. Thompson, Tulsa, for appellee, Tim Hayes.

## OPINION

HUNTER, Judge:

Appellant, RKO, appeals from the trial court's order granting Barkley's and Hayes's Motion to Vacate RKO's California judgment against them.

Barkley and Hayes, citizens of Tulsa, Oklahoma, made an Agreement with RKO and five other Investors to invest in the motion picture "Plenty," starring Meryl Streep. The group of seven Investors, known collectively as the "Plenty" Syndicate, agreed to assume RKO's obligation to Twentieth Century Fox Film Corporation to pay Fox any shortfall in revenues resulting from the picture's producing gross receipts less than $3,500,000.00. In return, the "Plenty" Syndicate was to receive a portion of any gross receipts exceeding $3,500,-000.00. The parties signed the Agreement on September 13, 1985.

### Terms of the Agreement

Under Paragraph 15(f) of the Agreement, the parties agreed that they would serve "all notices, payments and other communications hereunder" by U.S. mail on Michael R. Lombardi. Lombardi was one of the Investors, and Trustee for the RKO "Plenty" Syndicate. The parties also agreed, "Any notice so addressed and sent by mail shall be deemed to have been given when mailed."

1. Appellant, RKO, changed its corporate name to Entertainment Acquisition Corporation sometime between the date it signed the Agreement and the date it filed suit. For the sake of simplicity, however, we will refer to Appellant as RKO.

2. The trial court found that Paul was served by RKO and that Paul mailed copies of the Notice and Petition to Barkley and Hayes.

3. Barkley and Hayes also deny they received any of several letters Lombardi, Trustee for the "Plenty" Syndicate, swore he sent to them concerning the "Plenty" Syndicate, in July 1987.

Under Paragraph 15(g) the parties agreed to resolve all disputes under the Agreement by binding arbitration.

Under Paragraph 15(k), the parties agreed that they would enforce the Agreement under California law in either state or federal court in Los Angeles. The parties also agreed that any judgment entered by either court would bind them. The Investors appointed Gregory Paul, a Los Angeles lawyer, as their agent for service of process in any suit arising out of the agreement.

### The California Judgment

In June, 1987, RKO filed suit in State Court in Los Angeles against the Investors.[1] RKO sought a judgment to compel arbitration of a dispute under the Agreement. On June 17, 1987 Paul, the Investors' service agent, accepted copies of the Notice and Petition in RKO's suit to compel arbitration. On June 18, 1987, Paul mailed copies of the Notice and Petition to Barkley and Hayes, and to each of the other Investors.[2]

The arbitration hearing took place on September 23, 1987. The California court entered judgment against the seven Investors on March 7, 1988. The California court followed the arbitrator's recommendation and awarded $729,736.80, plus interest at ten percent from March 25, 1987, and an attorney fee of $27,652.00.

Barkley and Hayes claim, and the trial court found, that Barkley and Hayes did not receive Paul's letter. Barkley and Hayes also claim they knew nothing about the arbitration or the judgment until after the arbitration hearing and entry of judgment.[3]

Barkley denies several telephone conversations Lombardi swore they had. Barkley's denial comes in the face of Southwestern Bell's telephone records, and Lombardi's office records, showing a thirty seven minute conversation between Barkley's and Lombardi's offices on August 17, 1987. Those records reflect another conversation between the two offices of twenty three minutes on September 21, 1987. The September 21 call took place two days before the arbitration hearing. Barkley's and Lombardi's only connection was the "Plenty" Syndicate.

## ISSUE

There is but one issue here. Were due process notice requirements satisfied by RKO's service of the Notice and Petition on Paul? RKO's service of process on Barkley and Hayes satisfied due process notice requirements. Barkley's and Hayes's testimony that they did not receive the Notice and Summons Paul mailed to them does not change the result.

## I.

■ The trial court erroneously relied on, 12 O.S.1981 § 713 in its Order granting Barkley's and Hayes's Motion to Vacate Judgment. Section 713 is part of the Uniform Money–Judgments Recognition Act, 12 O.S.1981 §§ 710, et seq. Section 713 applies only to judgments of *foreign nations*. It does not apply to judgments of *sister states*. Section 710 defines the term "foreign state" as "any governmental unit *other than the United States, or any state* [or any Territory or possession of the United States]." [Emphasis added.] The trial court erred in relying on § 713(b)(1), which allows a court to deny recognition of a foreign judgment where "the defendant ... did not receive notice in sufficient time to enable him to defend." This is not an appropriate test for determining the enforceability of judgments of sister states.[4] The correct test is whether the California court had jurisdiction over Barkley and Hayes to enter the judgment it did. If the California court had jurisdiction, then it's judgment is entitled to full faith and credit under the constitution. Every state must give full faith and credit to valid judgments of sister states. Title 12 O.S. §§ 710, et seq., contains no such requirement.

Title 12 O.S.1981 §§ 719, et seq., the Uniform Enforcement of Foreign Judgments Act, governs the enforcement in Oklahoma of judgments of sister states. Section 720 of the Act defines a "foreign judgment" as a judgment or decree "of the United States or any other court which is entitled to full faith and credit in this state." Section 721 of the Act allows the

filing of a foreign judgment in the office of the court clerk of any county in Oklahoma. Section 721 further provides,

A judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a district court of this state and may be enforced and satisfied in like manner.

■ Under § 721, the foreign judgment is final for all purposes except lack of jurisdiction of the foreign court. *Aetna Finance Co. v. Bowler,* 622 P.2d 292 (Okl. App.1980). In *Aetna Finance,* the court said:

The intent of full faith and credit is to announce to a defendant that it must stand by the decision of a court within the United States that had personal jurisdiction of the parties. *The decision rendered is a decision of that state and has the effect ascribed to it by the law of the rendering state.* [Emphasis added.]

Unless Barkley and Hayes can show some irregularity in the proceedings resulting in the California court not having personal jurisdiction over them, we must give the California judgment full faith and credit.

## II.

■ We turn now to whether how RKO served process on Barkley and Hayes in the California suit denied them due process. Barkley and Hayes claim the trial court's finding of fact that they did not receive the Notice and Petition Paul mailed to them shows that they were denied due process. We disagree.

In the Agreement, Barkley and Hayes agreed the parties would resolve any disputes between them through binding arbitration. The parties appointed Paul as their service Agent. They agreed to try any suit involving the "Plenty" Syndicate in Los Angeles.

California law provides that a plaintiff may serve process on the defendant by

---

**4.** In their trial court briefs, Barkley and Hayes claimed that 12 O.S.1981 §§ 710, et seq. applied

to judgments of sister states. RKO did not point out the Act's inapplicability to the trial court.

serving "a person authorized by [the defendant] to receive service of process." Calif.Code Civ.Proc. § 416.90.[5] Under § 416.-90,

> Service on a service agent is accomplished and completed when a copy of the summons and complaint is delivered to a person authorized to receive service of process. No additional action is required.

Barkley and Hayes rely on *National Equipment, Ltd. v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) and *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Neither provides Barkley and Hayes a defense.

In *National Equipment v. Szukhent*, Id., plaintiff served defendants, two Michigan farmers, through a New York service Agent. Defendants appointed the New York service agent in a farm equipment lease they had made with plaintiff. A majority of the court held that parties to a contract may agree in advance to submit to the jurisdiction of a particular court and to be served through a service agent they have agreed to in the contract. The court held the case involved no due process issue because defendants admitted they had received a copy of the summons from the New York service agent.

In *National Equipment*, Justice Black wrote a dissent, and Justice Brennan, in which Chief Justice Warren and Justice Goldberg concurred, wrote another. Both dissents would have held that defendants due process rights were violated. Both dissents stressed, however, that the contract involved was a form lease covering farm equipment and the defendants were unsophisticated farmers. Justice Brennan said, "It offends common sense to treat a printed form which closes an installment sale as embodying terms to all of which the individual *knowingly assented*." [Emphasis added.] Thus, the dissenters thought defendants were denied due process because plaintiff had not shown that defendants had "knowingly assented" to appoint a New York service agent.

By contrast with the facts of *National Equipment*, Barkley and Hayes were investors in a sophisticated multimillion dollar motion picture deal. Barkley and Hayes admit that they signed the contract. They do not deny that they understood its provisions. Barkley is a practicing lawyer. Barkley's and Hayes's Agreement with RKO was not a form. Further, paragraph 16 of the Agreement provided:

> EACH PARTY HERETO HAS BEEN ADVISED TO SEEK THE OPINION OF HIS OR HER OR ITS SEPARATE LEGAL COUNSEL REGARDING THE AGREEMENT, AND HAS DONE SO. [Capitalization as in the original.]

Barkley and Hayes were parties to an arm's length transaction from which they hoped to make a great deal of money. They made a bargain with RKO and their fellow Investors. RKO served them through Paul, their service agent, according to the terms of the Agreement. RKO's manner of service satisfied due process requirements. Barkley and Hayes are liable under the judgment.

*Mullane v. Central Bank & Trust Co. of Hanover*, Id., also fails to support Barkley's and Hayes's position. In *Mullane*, the court held that service by publication violated 14th Amendment due process requirements if the plaintiff did not first diligently try to find the defendant and give him actual notice of suit "within the limits of practicability." Id., 339 U.S. at 318, 70 S.Ct. at 659. In *Mullane*, the plaintiff did not show that it attempted to find the defendants it served before seeking to cut off their rights by publication. The court, however, pointed out that due process does not require actual notice in all

5. Provisions approving service on an agent are prevalent throughout the United States. See, for example, Rule 4(d)(1), Federal Rules of Civil Procedure and 12 O.S.1990 Supp. § 2004.-C.1.c(1) (plaintiff may serve "an agent authorized by appointment"). The courts have held that such service comports with due process requirements. *Kenny Construction v. Allen*, 248 F.2d 656 (D.C.Cir.1957). (Agreement to appoint Clerk of D.C. Municipal Court in contract between consulting engineering firm and the District of Columbia upheld, where engineering firm, a Maryland resident was served through the Court Clerk.)

cases. Even notice by publication satisfies due process requirements if plaintiff makes a showing of having first diligently tried to find the defendant so notified. Due process requires only:

> Notice reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane*, Id. 339 U.S. at 314, 70 S.Ct. at 657.

Whether Barkley and Hayes actually received the Notice and Summons is immaterial. In *Green Mountain College v. Levine*, 120 Vt. 332, 139 A.2d 822 (1958) defendant agreed to service on the Secretary of State, under the terms of a contract he had made with the plaintiff. The court held,

> The danger that [the Secretary of State] might not forward notice to the defendants were risks which they took in appointing him.

Id. 139 A.2d at 825.

The court quoted from *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877), in which the court said that where one agrees to a particular mode of service,

> [He] should be bound by a judgment in which that mode of notification [of legal proceedings] has been followed, *even though he may not have actual knowledge of them*. [Emphasis supplied.]

We find *Green Mountain College v. Levine* persuasive and adopt its reasoning.

Under the California Code of Civil Procedure, § 416.90, service was "accomplished and completed" when Paul received Notice and Summons from RKO. This ends the inquiry. We find that Barkley and Hayes agreed to service upon Paul. Service upon Paul provided "notice reasonably calculated" to apprise Barkley and Hayes of the pendency of RKO's suit. *Mullane*, Id. Barkley's and Hayes's claim that they did not receive copies of the Notice and Summons does not create a due process issue.

The trial court's judgment is RE-VERSED and REMANDED. The trial court is instructed to set aside its Order Vacating Foreign Judgment, and enter an order recognizing RKO's judgment as an Oklahoma judgment from the date of its filing in the District Court of Tulsa County, on June 20, 1988.

HANSEN, V.C.J., and JONES, J., concur.

