**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 11, 2007

Charles R. Fulbruge III
Clerk

No. 06-50955
Summary Calendar

STEPHEN N. LISSON,

Plaintiff-Appellant,

versus

ING GROEP N.V. also known as, ING Group,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas, Austin Division
Civil Action No. 1:05-CV-852

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

PER CURIAM:*

This appeal arises from the district court's dismissal without prejudice of federal and state law claims asserted by Stephen Lisson ("Lisson") against ING Groep, N.V. ("ING Groep"). Lisson appeals the dismissal. We affirm the district court's judgment in part and remand in part.

---

*Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Lisson owns and operates the financial website *InsiderVC.com*, which serves as a medium for communication and interstate commerce. In September of 2002, Lisson discovered ING employees disrupting traffic on his website by repeatedly entering fraudulent user names and passwords and attempting to gain access to protected areas of the site. On September 25, he sent a letter to ING asking that it take actions to prevent further disruptive conduct. Two days later, ING Counsel Andrew Druch responded with a letter informing Lisson that ING had made "reasonable efforts" to terminate access to *InsiderVC.com* through ING technology systems. Despite these efforts, however, Lisson claims that only three days after Druch's letter, ING launched an automated attack against the site.

After ING did not cooperate in a damages assessment, Druch instructed Lisson in a January 2003 letter that if Lisson chose to sue ING, he should serve process on Druch at ING's New York office. On March 10, Lisson filed suit against "ING Groep." Before he could formally serve process to Druch on April 7, however, Lisson received a number of telephone messages from Robert Johnson, ING Groep's counsel at Fulbright Jaworski. Johnson explained that Lisson had filed suit against the wrong corporate entity, as Lisson had inappropriately sued the Dutch parent corporation "ING Groep" instead of the New York-based "ING Financial Holdings Corporation" ("ING Financial") at which Druch was employed. Johnson further claimed that service against ING Groep was only proper if made at ING Groep's Dutch office. In response to Johnson's message, Lisson dropped his case against ING Groep and filed suit against ING Financial. Three months later, Lisson's case against ING Financial was dismissed.

On November 14, 2005, Lisson filed a new suit against ING Groep and served process to

2

Andrew Druch at ING Financial's New York address. He alleged violations of 17 U.S.C. § 101, *et seq.* (Copyright Act), 17 U.S.C. § 1201 *et seq.* (Digital Millennium Copyright Act), 18 U.S.C. § 1030 *et seq.* (Computer Fraud and Abuse Act), and trespass. On December 12, ING Groep filed motions to dismiss the case for lack of personal jurisdiction, lack of proper summons, and lack of proper service. After ING Groep filed supplemental motions to dismiss and Lisson filed his opposition, the magistrate judge recommended that the district court dismiss the case for insufficient service. Despite Lisson's motion to reconsider, the district judge approved the magistrate judge's recommendation and dismissed without prejudice the case on May 11, 2006. In this appeal, Lisson contests the district court's dismissal. He contends that even though Andrew Druch might not have been explicitly authorized to receive service for ING Groep, it was acceptable to serve him for several reasons. First, Lisson claims that ING Financial represents ING Groep's principal United States office—where ING conducts the majority of its business, earns a substantial portion of its profits, and is authorized to receive service in securities cases. Second, Lisson claims that ING Financial is a domestic subsidiary of ING Groep and is thus capable of receiving service on ING Groep's behalf. And third, Lisson argues that the case was improperly dismissed. We address these arguments in turn.

## II. STANDARD OF REVIEW

The district court's determination of whether to dismiss a case for insufficient service is reviewed *de novo* under an abuse of discretion standard. *Holly v. Metro. Transit Auth.*, No. 05-20671, 2007 WL 98364, at *1 (5th Cir. Jan. 11, 2007) (unpublished) (citing *Lindsey v. United States R.R. Ret. Bd.*, 101 F.3d 444, 445 (5th Cir. 1996)); *Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990). This court affirms the district court's decision unless we find that service of process is insufficient, and the "serving party bears the burden of proving the validity of

3

service or good cause for failure to effect timely service." *Holly*, 2007 WL 98364, at \*1 (citing *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)); *Sys. Signs Supplies*, 903 F.2d at 1013 (citing *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305 (5th Cir. 1985); *Aetna Business Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981)).

### III.  DISCUSSION

A.      As a general rule, service upon an authorized agent satisfies due process by providing the defendant with actual notice of the suit. *National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315 (1964).  Courts are split, however, on the idea of whether service must always be made on an authorized agent. *O'Meara v. New Orleans Legal Assistance Corp.*, No. 90-4893, 1991 WL 110401, at \*3-4 (E.D. La. June 10, 1991) (noting that  some courts require service upon a managing agent, general agent, or agent appointed to receive service, while others require only that the person served know how to handle the papers so that the defendant will be provided notice of pending claims).  Like the district court, we adopt the line of reasoning adopted by the court in *O'Meara*, which holds that "the individual sought to be served must have actually authorized another to accept service of process on the would-be principal's behalf...." *Id.* at \*2.

In this case, there is no evidence that ING Groep ever authorized Andrew Druch to receive service on its behalf in non-securities suits, even though such service might have been sufficient to apprise ING Groep of the action pending against it.[1]  In fact, the opposite appears to be true.  In

---

[1] Both Andrew Druch and ING Financial appear to have been authorized, however, to receive service of process in *securities suits* against ING Groep.  While it might appear inconsistent to allow ING to selectively determine the types of suits in which its agents are authorized to receive service in the United States, we need not address this legal question now.  The more important issue is the factual question of whether ING Financial is a "domestic subsidiary" of ING Groep, as it bears direct

4

Lisson's first suit against ING Groep, Robert Johnson informed Lisson in multiple telephone messages that service would only be proper if delivered to ING Groep's home office in the Netherlands. In his second suit against ING Groep, Lisson appears to have ignored Johnson's advice, as he again delivered service to ING Financial's New York Office instead of ING Groep's Dutch office. The fact that Andrew Druch represented himself as an agent capable of receiving service on behalf of ING Groep cannot be made to validate Lisson's improper service, as "delivery to a purported agent does not constitute service on the would-be principal, even if the 'agent' represents himself to be so authorized or accepts service." *Id.* at *2. This is especially the case since at the time Lisson served Druch, Druch was no longer employed by ING Financial.

B.        In regard to foreign defendants, even if a domestic subsidiary is not explicitly authorized by its foreign parent corporation as an agent for service, the subsidiary might still be capable of receiving such service. *See, e.g.*, *Commercial Union Ins. Co. v. Alitalia Airlines S.p.A.*, 347 F.3d 448, 468 (2d Cir. 2003) (citing *Bulova Watch Co. v. K. Hattori & Co.*, 508 F.Supp.1132, 1333 (E.D.N.Y. 1981)).

ING Groep contends that, as a foreign corporation and signatory to the Hague Convention, it is entitled to receive all service of process at its home office in the Netherlands. However, as the United States Supreme Court acknowledged in *Volkwagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988),

> [w]here service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends, and the [Hague] Convention has no further implications....The only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service.

---

relevance to whether the district court's dismissal was proper. It on the basis of this factual question, that we remand.

It is therefore necessary to determine whether ING Financial is, as Lisson alleges, a domestic subsidiary of ING Groep.

In determining whether a corporation is a domestic subsidiary, the Second Circuit has held that "the fact that [] two companies share substantially the same name, the same counsel at trial and on appeal, and the same Internet site, strongly suggests a connection." *Commercial Union Ins Co.*, 347 F.3d at 469. In applying a state long-arm statute, the Fifth Circuit made similar findings, holding that "as long as a foreign corporation exercises such control over the domestic subsidiary that the two entities are essentially one, process can be served on a foreign corporation by serving its domestic subsidiary—without sending documents abroad." *Sheets v. Yamaha Motors Corp.*, U.S.A., 891 F.2d 533, 536 (5th Cir. 1990).

In this case, Lisson's initial reply to ING Groep's motion to dismiss strongly suggests a connection between ING Groep and ING Financial. As Lisson noted in his district court brief, "[a]ll of ING's business operations in the United States are part of ING Group[,]" and those business operations are both owned and controlled by ING Groep. Brief of Plaintiff at 3-4, *Lisson v. ING Groep*, ___ F. Supp. ___ (W.D. Tex. 2006) (No. A-05-CA-852-LY). ING Groep also refers to ING Financial as its "principal U.S. office," consolidates its financial reports with ING Financial, and considers ING Financial as its "Authorized Representative in the United States." Reply Brief of Appellant, *Lisson v. ING Groep, N.V.*, ___ F.3d ___ (5th Cir. 2007) (No. 06-50955). Because service would seemingly have been proper under *Schlunk* if ING Financial is determined to be a domestic subsidiary of ING Groep, and because it is possible that discovery will allow the district court to review evidence as to whether ING Financial is such a subsidiary, we remand this case to the

6

district court for further finding of fact.[2]  Should discovery produce no evidence that ING Financial is a subsidiary of ING Groep beyond what plaintiff has alleged, ING Groep may make a motion for summary judgment to have the case decided on the merits.

C.      It is true that district courts possess a broad discretion to dismiss cases or to simply quash service. *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir. 1994).  Lisson is a pro se litigant, however, and "[p]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings."  *Moore v. Agency for Int'l Development*, 994 F.2d 874, 876 (D.C. Cir. 1993); *but see, e.g., 217 Fed. AppxLee v. Henderson*, 75 F. Supp. 2d 591, 596 (E.D. Tex. 1999) (arguing that the latitude given to pro se litigants is not unlimited).  Given the dubious nature of ING Groep's connection to ING Financial, it might have been reasonable for Lisson to believe that his service upon ING Financial constituted proper service upon ING Groep.  Even though Lisson was informed that it was only proper to serve ING Groep in its Dutch office, previous courts have acknowledged that there is often more than one way to affect proper service.  Without making a determination of whether service in securities cases differs from service in non-securities suits, the ambiguous nature of ING Financial's status as a domestic

---

[2] While it is true that as the non-moving party, Lisson carries the burden to prove that service is proper, *Holly* 2007 WL 98364, at *1 (citing *Camiri*, 959 F.2d at 1346), when considering a motion to dismiss pursuant to Rule 12, the district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See, e.g., Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *McClinton v. Delta Pride Catfish, Inc.*, 982 F. Supp. 417, 418 (N.D. Miss. 1997).  Lisson has quite convincingly alleged that ING Financial is a domestic subsidiary of ING Groep.  As a result, the facts in this case should have been interpreted such that Lisson's allegations were accepted as true when the district court considered ING Groep's 12(b)(5) motion to dismiss.

More pragmatically, it is difficult to determine whether Lisson's allegations about ING Financial and ING Groep are true without at least allowing discovery to take place.  Summary judgment provides a means that the case can be terminated after the discovery period if discovery yields no probative evidence that ING Financial is a domestic subsidiary of ING Groep.

7

subsidiary of ING Groep demonstrates that Lisson's actions were not the result of "inexcusable neglect." *Crane v. Battelle*, 127 F.R.D. 174, 177-78 (S.D. Cal. 1989) (noting that a court can consider whether improper service is the result of innocent mistake or inexcusable neglect). Further fact-finding is necessary to determine if service upon ING Financial constituted sufficient service upon ING Groep.

## IV. CONCLUSION

In light of *Schlunk* and the ambiguity of ING Financial's status as a domestic subsidiary of ING Groep, the district court might have abused its discretion by dismissing Lisson's federal and state law claims without prejudice. Accordingly, we affirm the district court's judgment in part and remand in part to determine if ING Financial is a domestic subsidiary of ING Groep.